[No. C000615. Third Dist. Dec. 20, 1989.]

JOELLEN FARIA, Plaintiff and Appellant, v.
NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY,
Defendant and Appellant.

COUNSEL

John P. Lynch and Knight, Boland & Riordan for Defendant and Appellant.

Dean F. Cooper, Rodney J. Key and Drivon, Bakerink, Tabak, Balcao & Cooper for Plaintiff and Appellant.

## OPINION

**DeCRISTOFORO, J.**—A jury found defendant, Northwestern National Life Insurance Company, breached the covenant of good faith and fair dealing in its handling of plaintiff Joellen Faria's medical claim. The jury awarded plaintiff $6,000 in general damages and $100,000 in exemplary damages. Defendant appeals contending plaintiff's claims are preempted by the Employee Retirement Income Security Act of 1974, 29 United States Code section 1001 et seq. (ERISA). We agree and shall reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's employer, Stockton Savings & Loan, provided group medical insurance coverage through defendant insurance company. Her daughter was covered as a dependent. A dispute arose as the result of defendant's failure to make full payment on a claim for medical services to the daughter in June of 1983, and on December 1, 1983, plaintiff filed her complaint for damages against defendant, alleging defendant had breached both its duty of good faith and fair dealing and its fiduciary duty, and had violated the California Insurance Code section 790.03 proscriptions against unfair claims settlement practices.[1]

## I. *Preemption and Retroactivity*

The evidentiary detail as to plaintiff's claim and the alleged mishandling thereof need not be recited, because plaintiff's counsel, commendably,

---

[1] Section 790.03 provides in pertinent part: "The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance. . . . [¶] (h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: [¶] (1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue. (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies. [¶] (3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies. [¶] (4) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured. [¶] (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear. [¶] (6) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered. [¶] (7) Attempting to settle a claim by an insured for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application. [¶] (8) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured, his representative, agent, or broker. [¶] (9) Failing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made. [¶] (10) Making known to insurers or claimants a practice of the insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration. [¶] (11) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information. [¶] (12) Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage. [¶] (13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement. [¶] (14) Directly advising a claimant not to obtain the services of an attorney. [¶] (15) Misleading a claimant as to the applicable statute of limitations."

conceded at oral argument that the recent decision by the California Supreme Court in *Commercial Life Ins. Co.* v. *Superior Court* (1988) 47 Cal.3d 473 [253 Cal.Rptr. 682, 764 P.2d 1059] (cert. den. 490 U.S. 1075 [104 L.Ed.2d 651, 109 S.Ct. 2087]), established that the statutory action under Insurance Code section 790.03 subdivision (h) is preempted by ERISA, it having already been established by the United States Supreme Court in *Pilot Life Ins. Co.* v. *Dedeaux* (1987) 481 U.S. 41 [95 L.Ed.2d 39, 107 S.Ct. 1549] that common law tort and contract actions arising from the improper processing of claims for benefits under an insured employee benefit plan are preempted by ERISA. Appellant however contends that those decisions should not be applied retroactively to bar her cause of action.

■ As a general rule judicial decisions are given retroactive effect. (*Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973 [258 Cal.Rptr. 592, 772 P.2d 1059]; *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1207 [246 Cal.Rptr. 629, 753 P.2d 585].) This rule of retroactivity is not absolute. ■ As the California Supreme Court in *Newman, supra,* 48 Cal.3d 973 at page 983, stated: "[W]e have long recognized the potential for allowing narrow exceptions to the general rule of retroactivity when considerations of fairness and public policy are so compelling in a particular case that, on balance, they outweigh the considerations that underlie the basic rule. A court may decline to follow the standard rule when retroactive application of a decision would raise substantial concerns about the effects of the new rule on the general administration of justice, or would unfairly undermine the reasonable reliance of parties on the previously existing state of law. In other words, courts have looked to the 'hardships' imposed on parties by full retroactivity, permitting an exception only when the circumstances of a case draw it apart from the usual run of cases." (See *Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 152-153 [181 Cal.Rptr. 784, 642 P.2d 1305]; *Kreisher* v. *Mobil Oil Corp.* (1988) 198 Cal.App.3d 389, 399 [243 Cal.Rptr. 662].)

■ With these factors in mind we consider whether the decisions in *Pilot Life* and *Commercial Life* should be applied retroactively. Plaintiff argues the decision in *Pilot Life* was unforeseeable. However, plaintiff acknowledges, "It would be an understatement to say that the law in this regard [application of ERISA provisions to state statutory and common law] was 'unsettled' prior to *Pilot Life*." This "unsettled" atmosphere of law relating to ERISA preemption of state law claims negates plaintiff's argument that *Pilot Life* was unforeseeable and undercuts any argument that plaintiff reasonably relied on prior law.

Moreover, we note the California Supreme Court has transferred at least two cases, decided prior to *Commercial Life,* back to the appellate courts

with directions to vacate the opinions and reconsider the cases in light of *Commercial Life*: *Goodrich* v. *General Telephone Company* (Cal.App.) B020532; *Hughes* v. *Blue Cross of California* (Cal.App.) A032025. These transfers indicate the Supreme Court's desire for retroactive application of *Commercial Life*.[2]

Given the unsettled nature of the law prior to *Pilot Life* and the Supreme Court's action in instructing courts to reconsider cases in light of *Commercial Life*, we find both *Pilot Life* and *Commercial Life* to be fully retroactive in effect. Therefore, we hold plaintiff's state law causes of action for breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and violation of Insurance Code section 790.03, subdivision (h) are preempted by ERISA under the holdings in *Pilot Life* and *Commercial Life*. If the medical coverage provided to plaintiff by defendant is an ERISA plan, plaintiff's complaint fails to state a cause of action and the trial court judgment must be reversed.

---

[2] We note the court in *Hughes* v. *Blue Cross of Northern California* (1989) 215 Cal.App.3d 832 [263 Cal.Rptr. 850] has filed a new opinion denying an insurer the right to assert ERISA preemption on appeal. We indicate neither agreement nor disagreement with this opinion, which is not yet final, because it is factually distinguishable from the case before us. In *Hughes* the court concedes "[w]here . . . the facts with reference to the contention newly made on appeal appear to be undisputed and [it appears] that probably no different showing could be made at a new hearing it is deemed appropriate to entertain the contention as a question of law on the undisputed facts and pass on it accordingly." (*Id*. at p. 853, citations omitted.)

In *Hughes*, the court found the existence of an ERISA plan to be a disputed fact. At trial, a copy of the group insurance contract in question was introduced into evidence. However, the court found the "agreement does not clearly reveal who paid premiums under the policy" (*id*. at p. 855), an essential element in determining whether an employee benefit plan is covered by ERISA. The *Hughes* court noted: "If we were faced, as was the court in *Rizzi* v. *Blue Cross of So. California* (1988) 206 Cal.App.3d 380], with a question merely of substantial evidence, we would not hesitate to hold that this evidence, properly introduced and with an adequate foundation for relevance, would suffice to support a finding that the subject group insurance policy is an employee welfare benefit plan within the meaning of ERISA. But we can reverse the judgment here only if the fact of an employee welfare benefit plan is established beyond dispute. The inferences to be drawn from the record suggesting the existence of an ERISA plan, though highly plausible, in our view as a matter of fairness fall short of removing the question from the realm of reasonable objection and argument." (215 Cal.App.3d at p. 857.)

In the present case, properly introduced evidence, a copy of the group insurance contract, states the employer is to pay the entire cost of employee insurance and a portion of the cost of dependent's insurance. We believe this evidence established the existence of an employee welfare plan beyond dispute, a fact which distinguishes this case from *Hughes* and allows us to consider defendant's preemption agreement for the first time on appeal.

Another recent decision, *Duffy* v. *Cavalier* (1989) 215 Cal.App.3d 1517 [264 Cal.Rptr. 746], found no ERISA preemption in an action for breach of a broker's fiduciary duty. The court in *Duffy* found no ERISA preemption because "the state law we consider here does not affect relations between an ERISA fiduciary and an employee benefit plan or plan beneficiaries *as such*; it affects them in their entirely *separate capacities* as stockbroker and customer" (*id*. at p. 1529, citations omitted), a situation entirely different from the present case.

II.  *Existence of ERISA Plan*

Plaintiff contends no evidence was offered at trial as to whether the group insurance plan provided by Stockton Savings was an employee benefit plan under ERISA. Therefore it cannot be determined whether ERISA's preemption provisions apply.

■   The existence of an ERISA plan is ordinarily a question of fact, to be answered in light of all surrounding facts and circumstances. (*Lambert* v. *Pacific Mutual Life Ins. Co.* (1989) 211 Cal.App.3d 456, 463 [259 Cal.Rptr. 398]; *Rizzi* v. *Blue Cross of So. California* (1988) 206 Cal.App.3d 380, 384 [253 Cal.Rptr. 541].)

ERISA defines an "employee welfare benefit plan" as including "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits . . . ." (29 U.S.C. § 1002(1).) ERISA applies to "any employee benefit plan if it is established or maintained (1) by any employer engaged in commerce or in any industry or activity affecting commerce." (29 U.S.C. § 1003(a).)

The Department of Labor identifies group insurance programs offered by an insurer to employees which are *not* under ERISA. These non-ERISA plans meet the following four criteria: "(1) No contributions are made by an employer or employee organization; (2) Participation [in] the program is completely voluntary for employees or members; (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs." (29 C.F.R. § 2510.3-1(j).)

At trial, plaintiff testified she was given a booklet, by her employer, which described her insurance plan. Plaintiff also attached a copy of this booklet to her complaint.

The second page of this booklet contains a certificate of insurance. The booklet also contains a "Summary Plan Description." The description

states the plan name is Stockton Savings & Loan. The plan administrator is Ms. Diane Goolsby, of Stockton Savings & Loan. The records are to be maintained by the defendant insurance company, but Stockton Savings & Loan is to pay the *entire cost* of employee insurance and *a portion of the cost* of dependent's insurance. A section of the description covers "Claim Procedures." According to the plan, claim forms may be obtained from the plan administrator. Subsequently, the defendant will process the claim and either pay or issue a denial notice.

The final section of the summary plan description is entitled "Statement of ERISA Rights (Part of Summary Plan Description)." This section notifies the insured that "[a]s a participant in the plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA)." The employee is advised that participants are entitled to examine all plan documents, to obtain copies of all plan documents and information, and to receive a summary of the plan's annual financial report.

The ERISA section also informs the participant that: "In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called 'fiduciaries' of the plan, have a duty to do so prudently and in the interest of you and other plan participants. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA. If your claim for a welfare benefit is denied in whole or in part you must receive a written explanation of the reason for the denial. You have the right to have the plan review and reconsider your claim. [¶] Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the plan and do not receive them within 30 days, you may file suit in federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $100 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous."

■ We find the plan offered by Stockton Savings & Loan to its employees falls under the definition of an ERISA plan: it is (1) a plan (as evidenced by the booklet), with a plan administrator (a Stockton Savings employee), a source of financing (Stockton Savings), and a procedure to apply for and collect benefits; (2) established by an employer (Stockton Savings); (3) for the purpose of providing medical benefits to the participant employees and beneficiaries. (29 U.S.C. § 1002; see also *Lambert* v. *Pacific Mutual Life Ins. Co., supra,* 211 Cal.App.3d at p. 463.)

Moreover, the plan does not meet the criteria for a non-ERISA plan, outlined by the Labor Department. (29 C.F.R. § 2510.3-1.) In this case contributions *were* made by the employer Stockton Savings; the employer tacitly endorsed the plan; and the booklet given to employees shows Stockton Savings and defendant intended to create an ERISA plan and promoted it as such.

The Ninth Circuit in *Kanne* v. *Connecticut General Life Ins. Co.* (9th Cir. 1988) 867 F.2d 489 reached the same result when faced with similar evidence. In *Kanne* plaintiff failed to litigate at trial whether their benefit plan was covered by ERISA. However, defendant insurance company introduced the plan brochure at trial as an exhibit. The brochure described the plan as an ERISA plan with plaintiff's employer as administrator. The *Kanne* court reviewed the ERISA definition of an employee welfare plan and the Department of Labor criteria for non-ERISA plans and concluded: "The plan brochure submitted by Connecticut General as an exhibit at trial describes the plan as an ERISA plan, evidencing the intent of ABC [the employer] to create an ERISA plan. It is clear that, at a minimum, ABC does not merely advertise the group insurance, but rather, as the administrator of the plan, 'endorses' it within the meaning of 29 C.F.R. § 2510.3-1(j) (3). Thus the ABC plan is not one of the group insurance programs excluded by ERISA under the regulations. Because ABC is more than a mere advertiser of group insurance, there need not be employer contributions or automatic employee coverage to bring the plan within ERISA." (*Kanne, supra,* 867 F.2d at p. 493, citation omitted.)

The record therefore establishes, as a matter of law, the plan offered to plaintiff by her employer was covered by ERISA.

III. *Plaintiff's Cross-appeal*

Plaintiff filed a cross-appeal contending the trial court committed prejudicial error by refusing to allow prejudgment interest on the compensatory and punitive damages awarded. Because we reverse the trial court's judgment, plaintiff's cross-appeal is moot.

IV. *Attorneys' Fees*

At oral argument, defense counsel did concede and agree that plaintiff is nevertheless entitled to an award of reasonable attorneys' fees under ERISA (29 U.S.C. § 1132(g)), in the discretion of the trial court. Therefore, we remand the action to the trial court to consider and award plaintiff reasonable attorneys' fees.

### DISPOSITION

The judgment is reversed. The cause is remanded to the trial court with directions to enter judgment for the defendant, and to consider and award reasonable attorneys' fees to the plaintiff. Each party shall bear its own costs.

Puglia, P. J., and Marler, J., concurred.