[No. A042233. First Dist., Div. Three. June 12, 1989.]

CHARLES LAMBERT, Plaintiff and Appellant, v.
PACIFIC MUTUAL LIFE INSURANCE COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Stanley J. Bell and Joseph J. Appel for Plaintiff and Appellant.

Adams, Duque & Hazeltine, James H. Fleming, Jeffery Anne Tatum and Lawrence E. Butler for Defendants and Respondents.

## OPINION

## STRANKMAN, J.—

### I

### *Introduction*

The Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.)[1] comprehensively regulates employee pension and welfare benefit plans. ERISA protects the participants of such plans by requiring disclosure to participants, establishing standards of conduct and fiduciary duties, and providing for remedies, sanctions, and ready access to courts. (§ 1001b; *Commercial Life Ins. Co.* v. *Superior Court* (1988) 47 Cal.3d 473, 476 [253 Cal.Rptr. 682, 764 P.2d 1059].)

Plans subject to ERISA regulation include an " 'employee welfare benefit plan,' " defined in section 1002(1), as (1) a plan, fund, or program (2) established or maintained by an employer or employee organization (3) for the purpose of providing for its participants, through the purchase of insurance or otherwise, medical, disability, unemployment, and other benefits.[2]

State common law causes of action, including bad faith, and statutory causes of action based upon Insurance Code section 790.03, subdivision (h), arising from the denial of insurance benefits under an employee welfare benefit plan,[3] are, with limited exceptions, preempted by ERISA.[4]

---

[1] All further statutory references are to 29 United States Code unless indicated otherwise.

[2] Section 1002(1) provides: "The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions)."

[3] At the time of filing the first amended complaint, Insurance Code section 790.03, subdivision (h), created a private cause of action. (*Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880, 886 [153 Cal.Rptr. 842, 592 P.2d 329], overruled by *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58].) The *Moradi-Shalal* court held that the *Royal Globe* rule would continue to apply to all cases filed prior to the *Moradi-Shalal* decision. (*Moradi-Shalal, supra,* 46 Cal.3d at p. 292.)

[4] Section 1144(a) contains a broad preemption provision: "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee

(§ 1144(a); *Pilot Life Ins. Co.* v. *Dedeaux* (1987) 481 U.S. 41, 43, 47, 49 [95 L.Ed.2d 39, 45, 47-49, 107 S.Ct. 1549]; *Commercial Life Ins. Co.* v. *Superior Court, supra,* 47 Cal.3d at p. 475; *Rizzi* v. *Blue Cross of So. California* (1988) 206 Cal.App.3d 380, 392-396 [253 Cal.Rptr. 541].)

By his first amended complaint, appellant Charles Lambert sought, inter alia, damages against respondent Pacific Mutual Life Insurance Company (Pacific Mutual), among other defendants, alleging fraud and bad faith in the handling of his claim for benefits under his stepfather's employer's group insurance plan. The trial court granted summary judgment as to the entire complaint in favor of Pacific Mutual, finding the claims preempted by ERISA.

On appeal, appellant contends there are triable issues of fact as to whether the group insurance plan is an employee welfare benefit plan under section 1002(1), and, accordingly, whether ERISA's preemption provisions apply. We disagree and affirm.

## II

### *Facts*

The following facts are uncontroverted unless otherwise indicated.

A. *Group Insurance Plan.* Appellant's stepfather, Victor Peterson, was employed by American Automated Assembly Corporation (AAA) from August 1980 through September 1982. In or about May 1980, AAA had secured medical insurance coverage for its employees by subscribing to the Industries Multi-Protection and Care Trust (Multi-Protection Trust) which provided a group insurance plan underwritten by Pacific Mutual (Pacific Mutual plan). The Multi-Protection Trust agreement and application form signed by an AAA representative provided that employees did not contribute (i.e., pay premiums) for employee coverage but did contribute for dependent coverage.

---

benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975."

Section 1144(b)(2)(A) contains a savings provision: "Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."

Section 1132(e) provides in part that "State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section." Subsection (a)(1)(B) provides: "A civil action may be brought—[¶] (1) by a participant or beneficiary—[¶] (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . ."

The agreement and application form also indicated that the Pacific Mutual plan was subject to ERISA: "EMPLOYER — Under ERISA it is required that there be a named fiduciary for each employee benefit plan. It is understood that the undersigned employer is the named fiduciary for the plan of benefits provided by the Industries Multi-Protection and Care Trust on behalf of the employees of the firm. Pacific Mutual assumes the responsibility as claim review fiduciary for the plan."

Notwithstanding this written commitment by AAA, John Manning (former president of AAA), in his declaration in opposition to summary judgment, states that he never attempted to establish any type of employee benefit plan under ERISA or to assume responsibility for or administer an ERISA plan. He further states he never filed any reports or financial information pursuant to ERISA.

AAA provided Peterson with a Multi-Protection Trust Group certificate booklet for the Pacific Mutual plan. The certificate booklet contained information which complied with ERISA summary plan description requirements (§ 1022(b)), including the name of the plan, the source of plan contributions, a statement of an employee's rights under ERISA, and identified the participating employer (i.e., AAA) as the plan administrator.[5]

The record establishes that AAA was responsible and paid the premiums for employee coverage under the Pacific Mutual plan, while Peterson paid the premiums, at least in part, for dependent coverage.[6]

---

[5] The plan administrator is required to perform a number of functions under ERISA, including the disclosure and reporting of plan information to participants and the Secretary of Labor. (§ 1021.)

[6] The lack of documentation evidencing the payment of premiums evidently is due to the fact that AAA went out of business in 1983 and there are limited corporate documents remaining in existence.

As stated *ante,* the agreement and application form provided that employees were not responsible for contributions for employee coverage. In the transcript of the deposition of John Joseph Manning, the former president of AAA, Manning states that he issued a check on behalf of AAA for the first month's premium owing under the Pacific Mutual plan. The transcript further reflects: "[Manning]. We tried to have a competitive package for employees, *which would be a paid medical and dental plan by the company* for the employees and their families. [¶] Q. It is often true with group insurance that there is one rate charged for the employee and there is an additional sum to cover dependents. [¶] Is it your testimony that American would pay both the employee portion and the dependents' coverage portion of the premium? [¶] A. [Manning] The principle that I would operate is that normally we pay the employee's dependent part of the premium. . . ." (Italics added.)

The only reasonable inference to be drawn from such evidence is that AAA paid the premiums for employee coverage. Such inference is not contradicted, but in fact supported by the Manning declaration submitted by appellant in opposition to the motion for summary judgment, in which he states that *some of the employees' insurance premiums were paid directly by AAA without deduction from their salary, while it is his best recollection that*

As a result of increasing premiums under the Pacific Mutual plan, AAA determined to terminate coverage under the Pacific Mutual plan and replace it with a plan underwritten by Blue Shield of California (Blue Shield). The effective date of termination of AAA's coverage under the Pacific Mutual plan was June 30, 1981. The effective date of coverage under the Blue Shield plan was July 1, 1981.

B. *Events Leading to Lawsuit.* On June 29, 1981, one day before termination of AAA's employee coverage under the Pacific Mutual plan, appellant, then 16 years of age, was seriously injured in a motorcycle accident which rendered him a quadriplegic and totally disabled. At that time, he was insured under the Pacific Mutual plan as a dependent of Peterson. He was also insured as a dependent of his mother under a $1 million group insurance policy underwritten by Connecticut General Life Insurance Company (Connecticut General plan) maintained by his mother's employer.

Following the accident, appellant sent claims for medical services to both Pacific Mutual and Connecticut General. He contends that, based upon the coordination of benefit provisions of the Pacific Mutual and Connecticut General plans, claims for medical services incurred between June 29, 1981, through at least June 30, 1982, should have been paid by Pacific Mutual as a primary insurance carrier and by Connecticut General as a secondary insurance carrier. Instead, Connecticut General paid benefits for medical and other costs incurred by appellant as a primary insurance carrier until its $1 million limit was exhausted. Appellant then initiated this action against Pacific Mutual and respondents PM Management Services Company and David Spencer (collectively Pacific Mutual et al.).

C. *Synopsis of Procedural Background.* Appellant filed the complaint for compensatory and punitive damages on May 24, 1985. The complaint alleged a single cause of action of fraud. Pacific Mutual et al.'s answer thereto asserted as an affirmative defense preemption by ERISA. Appellant thereafter joined Blue Shield as a doe defendant, Pacific Mutual et al. filed a cross-complaint against Blue Shield, and Blue Shield filed a cross-complaint against Pacific Mutual et al.

On March 16, 1987, Pacific Mutual et al. moved for summary judgment on the complaint and Blue Shield's cross-complaint on grounds other than

---

"some employees did have their salary deducted for insurance premiums for those employees' dependents."

We do not consider the statement in the Peterson declaration that "*I believe* that I paid for my own insurance coverage through deductions from my salary . . ." (italics added), which is unsubstantiated by any documentary or other evidence, to be sufficiently competent to controvert the evidence that AAA paid the employee coverage premiums.

ERISA preemption. Thereafter, on April 6, 1987, the United States Supreme Court decided *Pilot Life Ins. Co.* v. *Dedeaux, supra,* 481 U.S. 41. In *Pilot Life,* the employer had established a disability employee benefit plan by purchasing a group insurance policy from Pilot Life Insurance Company. An injured employee sought permanent disability benefits but Pilot Life terminated the benefits after a period of time. The employee filed an action against Pilot Life in federal district court, alleging tortious breach of contract, breach of fiduciary duty, and fraud in the inducement. (*Id.,* at p. 43 [95 L.Ed.2d at p. 45].)

Pilot Life moved for summary judgment on the ground of ERISA preemption. The trial court granted summary judgment, finding all claims preempted. (*Pilot Life Ins. Co.* v. *Dedeaux, supra,* 481 U.S. at p. 44 [95 L.Ed.2d at pp. 45-46].) On appeal, the United States Supreme Court affirmed. The court held that because the causes of action were based on the alleged improper processing of a claim for benefits under an employee benefit plan, they fell within the expansive sweep of ERISA's preemption clause. (*Id.,* at p. 47 [95 L.Ed.2d at p. 47].)

In response to the *Pilot Life* decision, Pacific Mutual et al. argued ERISA preemption in its reply brief in support of summary judgment. Pacific Mutual et al. asserted that because the complaint did not seek benefits under the Pacific Mutual plan as described in section 1132(a)(1)(B), and did not name the Pacific Mutual plan as a party to the action, the complaint should be dismissed. The trial court treated the motion as one for judgment on the pleadings on preemption grounds, and granted the motion.[7] It allowed appellant leave to amend, however, to state, if possible, a cause of action under section 1132(a)(1)(B), which it described as one to enforce his rights or recover benefits due him under the plan, or to clarify his rights to future benefits under the plan.

Appellant thereafter filed his first amended complaint, but again failed to state a claim directly against the Pacific Mutual plan. The amended complaint purported to state seven causes of action, including a first cause of action for recovery of benefits against Pacific Mutual (purportedly a claim under section 1132(a)(1)(B)), as well as fraud, tortious breach of contract, and violation of statutory duties under the Insurance Code.

Pacific Mutual et al. moved for summary judgment on the amended complaint. The trial court granted summary judgment, finding that the Pacific Mutual plan was an ERISA plan; that all claims, except the first

---

[7]The trial court further ruled that, in light of its ruling on jurisdictional grounds, all cross-complaints for indemnity were dismissed without prejudice to refiling should appellant file an amended complaint under ERISA.

cause of action, were preempted by ERISA; and that, as to the first cause of action for recovery of benefits, the Pacific Mutual plan, *not* Pacific Mutual et al., was the sole proper party pursuant to *Gelardi* v. *Pertec Computer Corp.* (9th Cir. 1985) 761 F.2d 1323, 1324 (ERISA permits suits to recover benefits only against the plan as an entity, and not the employer or insurer) and *Cohen* v. *Equitable Life Assurance Society* (1987) 196 Cal.App.3d 669, 672-673 [242 Cal.Rptr. 84]. The court thereafter dismissed the action.

## III

### *Discussion*

We turn to the specific issue on appeal: Does the evidence establish as a matter of law that the Pacific Mutual plan was an employee welfare benefit plan under section 1002(1)?

The existence of an ERISA plan is ordinarily a question of fact, to be answered in light of all surrounding facts and circumstances. (See *Rizzi* v. *Blue Cross of So. California, supra,* 206 Cal.App.3d at p. 384; *Kanne* v. *Connecticut General Life Ins. Co.* (9th Cir. 1988) 867 F.2d 489, 492.) The Pacific Mutual plan, on its face, appears to be such a plan under the definition of section 1002(1): It is (1) a plan (as evidenced by the certificate booklet), with a plan administrator, a source of intended benefits and beneficiaries, a source of financing, and a procedure to apply for and collect benefits (see *Donovan* v. *Dillingham* (11th Cir. 1982) 688 F.2d 1367, 1372); (2) established by an "employer" group—the Multi-Protection Trust (§ 1002(5); see *Kanne, supra,* 867 F.2d at pp. 492-493); (3) for the purpose of providing medical benefits to the participant employees and beneficiaries.

The United States Department of Labor has issued regulations (29 C.F.R. § 2510.3-1 (1987)) which clarify the types of plans which fall within the scope of section 1002(1). Subsection (j) of these regulations (hereafter subsection (j)) specifically identifies the "group or group-type insurance programs" offered to employees which are *not* under ERISA. Subsection (j) provides that section 1002(1), does *not* include a group insurance program offered by an insurer to employees or members of an employee organization, *when four criteria are present* with respect to such program: "(1) No contributions are made by an employer or employee organization; [¶] (2) Participation [in] the program is completely voluntary for employees or members; [¶] (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and [¶] (4) The employer or employee organization receives no

consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs."

Thus, under subsection (j), where the employer does nothing more than arrange for group-type insurance, and the above four criteria are met, there is no ERISA plan. (See *Rizzi* v. *Blue Cross of So. California, supra,* 206 Cal.App.3d 380, and discussion at pp. 385-386; *Kanne* v. *Connecticut General Life Ins. Co., supra,* 867 F.2d at p. 492.) For example, an employer has not established an ERISA plan if it merely advertises a group insurance plan and arranges for deductions for premiums to be made from the employee's paycheck. (See *Otto* v. *Variable Annuity Life Ins.* (7th Cir. 1987) 814 F.2d 1127, 1129; see also dicta in *Credit Managers Ass'n* v. *Kennesaw Life & Acc. Ins.* (9th Cir. 1987) 809 F.2d 617, 625.)

Although a plan is excluded from ERISA when all four criteria under subsection (j) are met, it does not follow that an ERISA plan automatically exists when one or more of the four criteria are absent.[8] (*Rizzi* v. *Blue Cross of So. California, supra,* 206 Cal.App.3d at p. 388, fn. 8; see, e.g., *Baucom* v. *Pilot Life Ins. Co.* (M.D.N.C. 1987) 674 F.Supp. 1175, 1181 [although under the Department of Labor regulations mere endorsement may be enough to establish an ERISA plan, judicial precedent requires some degree of active involvement by the employer in the plan's founding and administration].) However, California, as well as federal decisions, use the four criteria under subsection (j) as an analytic starting point in determining the existence of an ERISA plan.

For example, in *Rizzi,* the court found a group insurance plan maintained by the employer was an ERISA plan where the employer paid all premiums and had the authority to terminate the plan, and coverage could not be cancelled by the insurer while the insured remained an employee and the premiums were paid. (*Rizzi, supra,* 206 Cal.App.3d at pp. 390-391.)

In *Kanne* v. *Connecticut General Life Ins. Co., supra,* 867 F.2d at pages 492-493, the court reviewed a plan administered by an employer group of which the litigating employee's employer was a member. Pursuant to

---

[8] In 29 Code of Federal Regulations section 2510.3-1(a)(4) (1987), the Department of Labor qualifies its regulation by stating: "Some of the practices listed in this section as excluded from the definition of 'welfare plan' or mentioned as examples of general categories of excluded practices are inserted in response to questions received by the Department of Labor and, in the Department's judgment, do not represent borderline cases under the definition in section 3(1) [§ 1002(1)] of the Act. *Therefore, this section should not be read as implicitly indicating the Department's views on the possible scope of section 3(1).*" (Italics added.)

ERISA's requirements, the plan was established as a trust, and the trust "purchased" a group health insurance from Connecticut General. The court noted the record was ambiguous as to whether the employer had contributed payments toward the employee's insurance coverage, or whether the employee's participation in the plan was voluntary or automatic. Further, the employer's function with respect to the plan was minor and ministerial, and no evidence suggested the plan was administered by a profit-making concern. Notwithstanding the lack of evidence as to the employer's involvement, the court held an ERISA plan was established by the *employer group's* involvement, which group (similar to the Multi-Protection Trust in our case) was considered an employer for purposes of ERISA under section 1002(5). The court observed the employer group intended to create an ERISA plan, promoted it as an ERISA plan, and *as administrator,* endorsed it.

*Kanne* is not inconsistent with *Fort Halifax Packing Co.* v. *Coyne* (1987) 482 U.S. 1 [96 L.Ed.2d 1, 107 S.Ct. 2211], where the Supreme Court, in a different factual context than that here, instructed that because ERISA's concern is with the administrative integrity of benefit programs, the lack of any ongoing involvement by the employer—whether as administrator, the payor of monthly premiums, or otherwise—will not invoke ERISA regulation. (*Id.,* at pp. 5-6 [96 L.Ed.2d at pp. 7-8].)

Here, as discussed *ante,* the uncontroverted evidence establishes that AAA paid the premiums for employee coverage through the date of termination of the Pacific Mutual plan. The evidence also establishes, as in *Kanne,* that the Multi-Protection Trust intended to create an ERISA plan and promoted it as such, and that AAA, as the designated plan administrator and fiduciary, tacitly, if not expressly, endorsed the plan. That Manning, as president of AAA, was not familiar with ERISA or AAA's obligations under ERISA incident to the plan, does not refute the endorsement. A test of an ERISA plan based on an employer's subjective intent is neither legally sound nor consistent with ERISA. (See *Rizzi* v. *Blue Cross of So. California, supra,* 206 Cal.App.3d at p. 387, fn. 7; *Donovan* v. *Dillingham, supra,* 688 F.2d at p. 1372.)

The record therefore shows there is no triable issue of fact as to the absence of two of the four criteria under subsection (j). The foregoing evidence also establishes sufficient employer involvement and administration under *Fort Halifax* to bring the Pacific Mutual plan within section 1002(1), as a matter of law.

## IV

### *Disposition*

The judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 23, 1989.