[No. S022055. July 9, 1992.]

LINDA BROWN MARSHALL et al., Plaintiffs and Appellants, v. BANKERS LIFE AND CASUALTY COMPANY et al., Defendants and Respondents.

## COUNSEL

Greene, Broillet, Taylor & Wheeler, Randy McMurray, Timothy J. Wheeler, Mandell, Lewis & Goldberg, Janice E. Garlitz and Michael L. Goldberg for Plaintiffs and Appellants.

O'Neal & Wodin, Marc J. Wodin, O'Melveny & Myers, Robert M. Eccles and Henry C. Thumann for Defendants and Respondents.

Richard E. Barnsback, Philip E. Stano, Woodrow E. Eno, Theresa L. Sorota, Seyfarth, Shaw, Fairweather & Geraldson, Jeffery Anne Tatum, Adams,

Duque & Hazeltime, David L. Bacon and Brad Wenger as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**PANELLI, J.**—We granted review in this case to determine whether an employer that purchases a group health insurance policy to cover its employees and their dependents, but whose involvement in administration of benefits under the policy is minimal, thereby establishes an "employee benefit plan" within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.), so that an action seeking damages under state law for the denial of a claim for policy benefits is preempted by federal law.[1] We conclude that an employee benefit plan is established on these facts despite the employer's minimal involvement in plan administration and complete noninvolvement in claims processing. An action seeking remedies under state law for an improper denial of benefits is, therefore, preempted. (*Pilot Life Ins. Co.* v. *Dedeaux* (1987) 481 U.S. 41, 47-57 [95 L.Ed.2d 39, 47-54, 107 S.Ct. 1549]; *Commercial Life Ins. Co.* v. *Superior Court* (1988) 47 Cal.3d 473, 484-485 [253 Cal.Rptr. 682, 764 P.2d 1059].)

### BACKGROUND

In 1983 Donald Marshall was employed by Miller Import Datsun, Inc. (Miller Import). Miller Import's employee manual stated that all employees would be provided with group health insurance coverage. From March 1, 1983, to October 1, 1983, Miller Import provided its employees with health insurance coverage under a group health, life, and disability insurance policy issued by Bankers Life and Casualty Company (Bankers) and administered by Frank B. Hall & Company of California/MIA Administrators (Hall/MIA). All of Miller Import's employees were covered under the policy. Miller Import allowed its employees to enroll their dependents for coverage under the group policy, and Donald Marshall enrolled his wife, Linda. Miller Import paid the entire cost of premiums for its employees. It also paid the cost of premiums for covered dependents and then deducted those amounts from employees' paychecks. Hall/MIA billed Miller Import for premiums on a monthly basis.

Miller Import's role in administration of the policy was minor. It directed its employees to fill out enrollment cards and forms for changes of beneficiaries and dependent coverage; it then submitted the completed cards to

---

[1] See 29 United States Code sections 1002(1) (definition of "employee welfare benefit plan"), 1144(a) (supersedure of state laws relating to employee benefit plans).

Hall/MIA. Miller Import received, and distributed to its employees, booklets entitled "Your Group Insurance Plan," containing information about the policy and procedures for filing claims. Additionally, Miller Import gave its employees copies of a three-page letter, prepared by Hall/MIA, explaining coverage under the policy. Miller Import provided its employees with claim forms, which they or their health care providers submitted directly to Hall/MIA. Miller Import neither reviewed nor evaluated claim forms; Hall/MIA made all determinations regarding eligibility for medical benefits. Miller Import employees were asked to contact Hall/MIA with any questions regarding the policy. However, when employees occasionally asked questions regarding enrollment, coverage changes, and claims, Miller Import personnel would try to respond before contacting Hall/MIA.

Miller Import did not intend to create an ERISA-governed benefit plan, and never filed any reports with the United States Department of Labor with respect to its group insurance policy.

The present suit arose out of the denial of Linda Marshall's claim for medical benefits. The operative pleading (the fourth amended complaint) alleged that Linda Marshall suffered aftereffects of an aneurysm and brain surgery, requiring hospitalization, during the term of the Bankers policy. Although Hall/MIA confirmed coverage under the policy at the time of her hospitalization, coverage was later revoked and her claims for benefits were denied on the basis that her claim related to a preexisting condition, sickle-cell anemia. The Marshalls sued Bankers and Hall/MIA, alleging breach of the duty of good faith and fair dealing, fraud, intentional infliction of emotional distress, negligence, and violation of Insurance Code section 790.03. Defendants denied liability. Both sides moved unsuccessfully for summary judgment on the issue of whether ERISA preempted the Marshalls' action. (29 U.S.C. § 1144(a).) That issue was bifurcated for trial on stipulated facts as set forth in the preceding three paragraphs.

The trial court ruled that Miller Import's insurance program constituted an "employee welfare benefit plan" within the meaning of ERISA, so that the Marshalls' claims were preempted. Accordingly, it entered judgment for defendants. The Court of Appeal reversed, holding that because there was no administrative activity potentially subject to employer abuse, ERISA was not implicated. For the reasons that follow, we conclude the Court of Appeal erred in focusing on the employer's involvement in administration of policy benefits.

### ANALYSIS

ERISA is a comprehensive federal law designed to promote the interests of employees and their beneficiaries in employee pension and benefit plans.

(*Shaw* v. *Delta Air Lines, Inc.* (1983) 463 U.S. 85, 90 [77 L.Ed.2d 490, 496-497, 103 S.Ct. 2890].) As a part of this integrated regulatory system, Congress enacted various safeguards to preclude abuse and to secure the rights and expectations that ERISA brought into being. (29 U.S.C. § 1001; see also Sen. Rep. No. 93-127, 1st Sess., p. 36 (1973).) Prominent among these safeguards is an expansive preemption provision, found at section 514 of ERISA (29 U.S.C. § 1144; *Ingersoll-Rand* v. *McClendon* (1990) 498 U.S. 133, __ [112 L.Ed.2d 474, 482-483, 111 S.Ct. 478]; *Carpenters So. Cal. Admin. Corp.* v. *El Capitan Development Co.* (1991) 53 Cal.3d 1041, 1047 [282 Cal.Rptr. 277, 811 P.2d 296].)

ERISA's preemption clause is conspicuous for its breadth, establishing as an area of exclusive federal concern the subject of every State law that "relates to" an employee benefit plan governed by ERISA. (*FMC Corp.* v. *Holliday* (1990) 498 U.S. 52, __ [112 L.Ed.2d 356, 364, 111 S.Ct. 403].) ERISA preempts "any and all State laws insofar as they . . . relate to any employee benefit plan," except laws "which regulate insurance . . . ." (29 U.S.C. § 1144(a), (b)(2)(A).) An employee benefit plan is not deemed to be an insurance company or other insurer, or to be engaged in the business of insurance, for purposes of any state law purporting to regulate insurance companies or insurance contracts. (29 U.S.C. § 1144(b)(2)(B).)

In *Pilot Life Ins. Co.* v. *Dedeaux, supra,* 481 U.S. 41, the high court held that ERISA preempts state common law tort and contract actions based on an insurer's improper processing of a claim for benefits under an insured employee benefit plan because such actions "relate to" an employee benefit plan, and because the state common law of tort and contract does not "regulate insurance" within the intent of ERISA. (*Id.* at pp. 47-57 [95 L.Ed.2d at pp. 47-54].) In *Commercial Life Ins. Co.* v. *Superior Court, supra,* 47 Cal.3d 473, we held that ERISA preempts a surviving private cause of action brought under California Insurance Code section 790.03, subdivision (h), when the action asserts a claim arising from an employee benefit plan. (47 Cal.3d at p. 484; see *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] [prospectively eliminating private causes of action under Ins. Code, § 790.03, subd. (h)].) Clearly, *Pilot Life* and *Commercial Life* require us to conclude that all of the Marshalls' causes of action are preempted if the group health plan under which Linda Marshall filed a claim for benefits is an employee benefit plan governed by ERISA. We turn accordingly to that question.[2]

ERISA governs any employee benefit plan established or maintained by an employer engaged in commerce or in an industry or activity affecting

---

[2]Although the United States Supreme Court has not addressed the question expressly, it has assumed that employer-sponsored group insurance plans are ERISA plans. In *Pilot Life*, as in this case, the employer purchased a group disability insurance policy, collected and matched

commerce. (29 U.S.C. § 1003(a).) An "employee welfare benefit plan," within the meaning of ERISA, is "any plan, fund, or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) *medical, surgical, or hospital care or benefits*, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services . . . ." (29 U.S.C. § 1002(1), italics added.)

■ The existence of an ERISA plan is a question of fact, to be answered in light of all of the surrounding circumstances as viewed by a reasonable person. (*Kanne* v. *Connecticut General Life Ins. Co.* (9th Cir. 1988) 867 F.2d 489, 492.) The burden is on defendants to prove facts necessary to establish the defense of ERISA preemption. (*Id.* at p. 492, fn. 4.)

■ The Marshalls contend that Miller Import did not establish an employee benefit plan under ERISA when it purchased the Bankers policy, arguing that there is no employee benefit plan unless the employer is involved in the plan's administration. Initially, we must observe that the statutory language does not support such a requirement. Instead, ERISA applies when an employer "*establishes* or *maintains*" a plan for the purpose of providing its employees and their dependents with medical benefits. (29 U.S.C. § 1002(1), italics added.) The statute expressly contemplates the purchase of insurance as a possible means of providing those benefits. (*Ibid.*) ERISA's definition of "administrator" covers a person so designated by the terms of the instrument under which the plan is operated, who may be someone other than the employer sponsoring the plan. (29 U.S.C. § 1002(16)(A); see also 29 U.S.C. §§ 1102(b)(2) [plan must describe any

its employees' contributions to the plan and forwarded premiums to the insurer; the employer also provided claim forms to its employees and forwarded the completed forms to the insurer, which bore the responsibility of determining who would receive benefits. (*Pilot Life Ins. Co.* v. *Dedeaux, supra,* 481 U.S. at p. 43 [95 L.Ed.2d at p. 45].) Similarly, in *Commercial Life* the employer sponsored an insured medical benefit plan for its employees; the plaintiff employee forwarded his medical bills to the insurer for payment; and the insurer refused payment, denying coverage. (*Commercial Life Ins. Co.* v. *Superior Court, supra,* 47 Cal.3d at p. 475.) In neither case is there any indication that the employer took a role in the processing of claims. The Marshalls do not attempt to draw any factual distinctions between this case, on one hand, and *Pilot Life* and *Commercial Life*, on the other. However, *Pilot Life* did not explicitly address the requirements of an ERISA plan, and in *Commercial Life* the parties did not dispute that the plan was of the type regulated by ERISA. Appellate courts in this state and in the federal system have in a number of cases articulated tests for determining whether a given arrangement constitutes an employee benefit plan within the contemplation of ERISA. We are now called upon to do the same.

procedure for allocation of responsibilities for operation and administration of plan], 1105(c) [plan instrument may provide for procedures to allocate fiduciary responsibilities among named fiduciaries and may provide for named fiduciaries to designate others to carry out fiduciary responsibilities under plan].) In addition, the United States Department of Labor's regulations implementing ERISA contemplate that benefits under an insured employee-welfare-benefit plan may be administered by an insurance company or service. (29 C.F.R. § 2560.503-1(c), (g)(2) (1984).) Finally, we note that holders of group insurance policies commonly do not bear primary responsibility for processing claims. That function is generally either retained by the insurer or delegated to a third-party administrator, as in this case. Thus, considerations founded in the statute, implementing regulations, and common practice militate against the argument advanced by the Marshalls.

*Fort Halifax Packing Co.* v. *Coyne* (1987) 482 U.S. 1 [96 L.Ed.2d 1, 107 S.Ct. 2211] (*Fort Halifax*), on which the Marshalls rely, does not support a contrary conclusion. *Fort Halifax* was an action to enforce rights under a Maine statute requiring employers to make a one-time severance payment to employees in the event of a plant closing. (Me. Rev. Stat. Ann., tit. 26, § 625-B.) The employer asserted ERISA preemption as a defense against the action. The high court held that the Maine statute was not preempted by ERISA "because the statute neither establishes, nor requires an employer to maintain, an employee welfare benefit 'plan' under that federal statute." (*Fort Halifax, supra,* 482 U.S. at p. 6 [96 L.Ed.2d at p. 8].) The high court reasoned that "[t]he requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. . . . The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits." (*Id.* at p. 12 [96 L.Ed.2d at pp. 11-12].) ERISA's regulatory concerns are implicated only when there is ongoing administrative activity subject to abuse. When delivery of a benefit requires no administrative scheme—as with the nonrecurring severance payment at issue in *Fort Halifax*—then ERISA's interest in ensuring national uniformity of regulation is not implicated. When a continuing administrative scheme is required, on the other hand, ERISA's preemption provision eliminates the threat of conflicting and inconsistent state and local regulation. (*Id.* at p. 9 [96 L.Ed.2d at pp. 9-10].)

*Fort Halifax, supra,* 482 U.S. 1, dealt with a benefit payable directly by an employer, not pursuant to an insurance policy. Consequently, the high court had no occasion to address the situation of an employer that chooses to provide its employees with a benefit through the mechanism of a group insurance policy administered by the insurer or another person so designated. Its reference to the "employer's obligation" must be read in the light

of its facts. Properly understood, *Fort Halifax* requires us to consider not the level of the *employer's* participation in an ongoing administrative program, but rather whether such a program exists at all.[3]

■ While a plan is not established merely by the employer's deciding to have one, the plan need not be in writing in order to exist. (*James* v. *National Business Systems, Inc.* (7th Cir. 1991) 924 F.2d 718, 720.) To hold that a plan exists, the court must be able to determine "whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." (*Donovan* v. *Dillingham, supra*, 688 F.2d 1367, 1373 [en banc]; see also *Brown* v. *Ampco-Pittsburgh Corp.* (6th Cir. 1989) 876 F.2d 546, 551 [adopting *Dillingham* test]; *Ed Miniat, Inc.* v. *Globe Life Ins. Group, Inc.* (7th Cir. 1986) 805 F.2d 732, 739 [same]; *Harris* v. *Arkansas Book Co.* (8th Cir. 1986) 794 F.2d 358, 360 [same]; *Scott* v. *Gulf Oil Corp.* (9th Cir. 1985) 754 F.2d 1499, 1503-1504 [same].) ■ These criteria are easily met in this case. A reasonable person would conclude that the intended benefits were the payment of medical and hospitalization expenses under the group insurance policy Miller Import purchased; the beneficiaries were Miller Import's employees and covered dependents; the source of financing was the premiums paid by Miller Import and the employees; and the procedure for receiving benefits was the submission to Hall/MIA of claim forms procured from Miller Import. (*Hansen* v. *Continental Ins. Co.* (5th Cir. 1991) 940 F.2d 971, 977.)

■ Having concluded that a "plan" exists, we must determine whether it is an *ERISA* plan. (*Hansen* v. *Continental Ins. Co., supra*, 940 F.2d at p.

---

[3]The Marshalls urge that *Gahn* v. *Allstate Life Ins. Co.* (5th Cir. 1991) 926 F.2d 1449 dictates a contrary rule. We cannot agree. *Gahn* was a suit arising out of an alleged wrongful termination of coverage under a group health insurance policy. The plaintiff was an employee of her husband's business; he purchased the insurance to cover himself and his employees (his wife and their two sons). Defendant Allstate provided the insurance through a multiple employer trust. In determining whether an employee welfare benefit plan was established on these facts, the district court focused on the relationship between Allstate and the trust. The court of appeals held that focus to be erroneous, noting that the trust itself was not established or maintained by an employer and was therefore not an employee welfare benefit plan. (*Id.* at p. 1452.)

In the case before us, the Marshalls focus on the *Gahn* court's statement that the district court should have looked to "the employer, Mr. Gahn, and his involvement with the administration of the plan." (*Gahn* v. *Allstate Life Ins. Co., supra*, 926 F.2d at p. 1452.) Despite the quoted language, the court of appeals did *not* consider whether it was Mr. Gahn's responsibility to process claims under the policy. Rather, the court employed the tests formulated in *Donovan* v. *Dillingham* (11th Cir. 1982) 688 F.2d 1367, 1373, and in the Department of Labor's safe-harbor regulation (29 C.F.R. § 2510.3-1(j)), discussed *post* at this page and page 1055, and concluded the record was insufficient to enable it to determine whether Mr. Gahn's group health plan was an employee benefit plan. *Gahn* does not, therefore, stand for the proposition that an employer must administer a benefit plan in order for ERISA to apply.

977.) An ERISA plan is one established or maintained by the employer with the purpose of providing its employees with any of the types of benefits specified in ERISA. (See 29 U.S.C. § 1002(1) ["medical, surgical, or hospital care or benefits"].) There is no dispute that the hospitalization benefits Linda Marshall sought fall within the enumerated categories of benefits.

The remaining question, then, is whether Miller Import "established or maintained" the plan in order to provide its employees with medical or hospitalization benefits. No single act in itself necessarily constitutes the establishment of a plan (*Donovan* v. *Dillingham, supra,* 688 F.2d at p. 1373), but an employer can establish an ERISA plan "rather easily." (*Credit Managers Ass'n* v. *Kennesaw Life & Acc. Ins.* (9th Cir. 1987) 809 F.2d 617, 625.) The Court of Appeals for the Ninth Circuit has noted in dicta that "[e]ven if an employer does no more than arrange for a 'group-type insurance program,' it can establish an ERISA plan, unless it is a mere advertiser who makes no contributions on behalf of its employees." (*Ibid.,* citing 29 C.F.R. § 2510.3-1(j) (1975).) ■ The United States Department of Labor has promulgated a regulation excluding group insurance programs from ERISA's definition of "employee benefit plan" when: (1) the employer makes no contributions toward premiums; (2) participation is completely voluntary for employees; (3) the employer's sole functions are, without endorsing the program, to allow the insurer to publicize it to employees, to collect premiums through payroll deductions, and to remit them to the insurer; and (4) the employer receives no consideration in connection with the program other than reasonable compensation for administrative services rendered in connection with the payroll deductions. (29 C.F.R. § 2510.3-1(j).) All four conditions must be present in order for the plan to fall outside ERISA (*Kidder* v. *H & B Marine, Inc.* (5th Cir. 1991) 932 F.2d 347, 351), although as the Court of Appeals for the Seventh Circuit has pointed out, "in creating a safe harbor [the regulation] does not automatically invalidate all arrangements on the high seas." (*Brundage-Peterson* v. *Compcare Health Services Ins.* (7th Cir. 1989) 877 F.2d 509, 511; see also 29 C.F.R. § 2510.3-1(a)(4) (1975) [safe-harbor regulation should not be read as indicating Department of Labor's view of possible scope of "employee welfare plan" under ERISA].) Because Miller Import paid the premiums for its employees' coverage, the regulation undercuts rather than supports the Marshalls' position.

■ A "bare purchase" of insurance—one meeting the conditions set forth in the Department of Labor's regulation, with no employer endorsement or involvement other than deducting premiums from employees' paychecks and forwarding them to the insurer—does not conclusively establish the existence of an ERISA plan. (*Kanne* v. *Connecticut General Life Ins. Co.,*

*supra*, 867 F.2d at p. 492.) However, a purchase of insurance is evidence of the establishment of a plan, and the purchase of a policy covering a class of employees offers substantial evidence that the employer has established a plan. (*Donovan* v. *Dillingham, supra,* 688 F.2d at p. 1373.)

The Marshalls rely on *Taggart Corp.* v. *Life & Health Benefits Admin.* (5th Cir. 1980) 617 F.2d 1208, 1211, certiorari denied 450 U.S. 1030 [68 L.Ed.2d 225, 101 S.Ct. 1739], for the proposition that an employer must administer benefits under a group insurance policy in order for ERISA to apply. However, in a case decided after *Taggart*, the Court of Appeals for the Fifth Circuit rejected the contention that *Taggart* held an employer's purchase of an insurance policy to be outside the scope of ERISA. (*Memorial Hosp. System* v. *Northbrook Life Ins. Co.* (5th Cir. 1990) 904 F.2d 236, 241-242.) The court emphasized that *Taggart* involved a claim by a corporation and its only employee that a multiple employer trust (MET) constituted an ERISA plan; the corporation, through its president and sole employee, subscribed to the MET in order to obtain health care for the president and his family at reduced premiums. The corporation and its president sued under ERISA to recover benefits allegedly owing the president's wife. The United States District Court dismissed for lack of subject matter jurisdiction, concluding the evidence showed the transaction simply involved a purchase of insurance by the plaintiff for himself and his family. (See *Taggert Corp.* v. *Efros* (S.D.Tex. 1979) 475 F.Supp. 124, 127.) The Court of Appeals affirmed, holding that neither the MET nor the corporation's subscription to it constituted an ERISA plan. The court reasoned that the corporation did no more than make payments to a purveyor of insurance, evidently for tax reasons. (*Taggart Corp.* v. *Life & Health Benefits Admin., supra,* 617 F.2d at p. 1211; cf. 29 C.F.R. § 2510.3-3(b), (c)(1) [plans without employees are not governed by ERISA; an individual and his or her spouse shall not be deemed employees of a business, whether incorporated or unincorporated, that is wholly owned by the individual or by the individual and the spouse].) *Taggart*, therefore, does not avail the Marshalls.

Miller Import did more than make a "bare purchase" of insurance. It selected the Bankers policy from among other available policies, choosing to provide health care benefits to all of its employees at its own cost, and to provide the opportunity for its employees to enroll their dependents in the group plan. Miller Import paid monthly premiums, submitted enrollment cards and forms for changes of beneficiary to Hall/MIA, and cancelled the Bankers policy after six months' time, substituting another group policy purchased from a different insurer. Miller Import's actions demonstrated beyond peradventure that it established and maintained the policy. The fact that Miller Import's administrative functions under the policy are minimal is

perfectly in keeping with its intent that Hall/MIA administer the plan that Bankers insured. (See *Memorial Hosp. System* v. *Northbrook Life Ins. Co., supra,* 904 F.2d at pp. 242-243.) Delegation of plan administration is a common feature of employee benefit plans, one contemplated, as we have seen, by ERISA. (*Brundage-Peterson* v. *Compcare Health Services Ins., supra,* 877 F.2d at p. 511; see 29 U.S.C. §§ 1002(16)(A), 1102(b)(2), 1105(c); see also 29 C.F.R. § 2560.503-1(c), (g)(2).) Such a delegation in no way precludes the establishment or maintenance of an ERISA plan.

We conclude that an employer that—in order to provide its employees with any of the benefits specified in ERISA—purchases a group insurance policy, contributes toward premiums and remits them to the insurer, and retains authority to terminate the policy or change its terms has "established or maintained" an ERISA plan regardless of whether it also processes claims or otherwise administers the policy. (See also *International Resources* v. *New York Life Ins.* (6th Cir. 1991) 950 F.2d 294, 297-298 [applying *Donovan* and *Brundage* analyses to find ERISA plan on similar facts].)

Our conclusion is consistent with the views of the United States Department of Labor. In a 1976 interpretive opinion, the department took the position that an ERISA plan is created in an arrangement whereby the employer purchases a group insurance policy providing life, accident, and health benefits and contributes the entire cost of premiums for employees, with employees contributing the cost of premiums for covered dependents through payroll deductions. (U.S. Dept. Labor, ERISA Opn. Letter 76-06 (Apr. 30, 1976).) ▮ The department's reasonable views, while not binding on us, are entitled to deference. (*Massachusetts* v. *Morash* (1989) 490 U.S. 107, 116 [104 L.Ed.2d 98, 109-110, 109 S.Ct. 1668].)

Language in several decisions by California Courts of Appeal can be read to suggest that employer involvement in the administration of policy benefits is necessary in order to trigger the application of ERISA. In *Rizzi* v. *Blue Cross of So. California* (1988) 206 Cal.App.3d 380 [253 Cal.Rptr. 541] (*Rizzi*), the first of these decisions, the court relied on *Fort Halifax, supra,* 482 U.S. 1, to declare that ERISA's concern with regulating the administrative integrity of a program arises when an employer provides benefits in a way that requires the employer's administration of funds. The *Rizzi* court stated that "[t]he ultimate determination depends on an evaluation of all the circumstances, keeping in mind ERISA's purpose of regulating an *employer's administration* of benefit plans." (206 Cal.App.3d at p. 390, italics in original; see also *Lambert* v. *Pacific Mutual Life Ins. Co.* (1989) 211 Cal.App.3d 456, 463-465 [259 Cal.Rptr. 398] [applying similar analysis].)

As the court in *Hughes* v. *Blue Cross of Northern California* (1989) 215 Cal.App.3d 832 [263 Cal.Rptr. 850] recognized, however, *Rizzi*'s language

must be read in light of its actual holding: affirmance of summary judgment dismissing an action on the ground of ERISA preemption "on a showing only that the employer procured the group insurance policy for the benefit of its employees, maintained control over amendment or termination of the policy, and performed certain incidental services, such as transmission of subscription charges and notices." (*Id.* at pp. 854-855.)

*Rizzi, supra,* 206 Cal.App.3d 380, as the court below and the parties seem to agree, involved facts virtually indistinguishable from those in this case. Unlike the court below, we believe *Rizzi* correctly held the employee's action preempted. *Rizzi*'s emphasis on the employer's administration of the program, however, predicated on an overexpansive reading of *Fort Halifax, supra,* 482 U.S. 1, does not accurately reflect the law.

■ Our conclusion that Miller Import established and maintained a plan under ERISA is not altered by the fact that Miller Import neither complied with ERISA's requirements nor intended to create an ERISA plan. (*Scott v. Gulf Oil Corp., supra,* 754 F.2d at pp. 1503-1504; see also *Firestone Tire & Rubber Co.* v. *Bruch* (1989) 489 U.S. 101, 105 [103 L.Ed.2d 80, 88-89, 109 S.Ct. 948] [claims under termination pay plan, established by employer unaware of ERISA's applicability and requirements, adjudicated under ERISA].) The test of whether a benefit plan is exempt from ERISA is not one of the employer's motivation. (*Shaw* v. *Delta Air Lines, Inc., supra,* 463 U.S. at p. 107 [77 L.Ed.2d at p. 507].) An employer cannot "opt out" of ERISA by noncompliance.

For the first time on appeal, the Marshalls assert that defendants are equitably estopped to raise preemption as a defense. Assuming, without deciding, that the doctrine of estoppel might in an appropriate case be applied to avoid ERISA preemption,[4] we decline to address the issue in the absence of a fully developed record. Although the Marshalls refer to evidence that the defendants failed to disclose that the plan was governed by ERISA, they cite no evidence establishing that defendants were aware either that the policy was subject to ERISA or that ERISA would preclude the Marshalls from asserting state law causes of action. Nor do they cite evidence to support their contention that they relied on defendants' conduct to their injury. (See *Ellenburg* v. *Brockway* (9th Cir. 1985) 763 F.2d 1091,

---

[4]The Marshalls cite a number of cases in support of their estoppel argument, but none is apposite; the cases hold that a defendant may be estopped to deny coverage under ERISA of benefits promised in a plan, not that a defendant may be estopped to raise the defense of ERISA preemption in an action under state law. (*Davidian* v. *Southern California Meat Cutters Union* (9th Cir. 1988) 859 F.2d 134, 136; *Dockray* v. *Phelps Dodge Corp.* (9th Cir. 1986) 801 F.2d 1149, 1155; see also *Black* v. *TIC Investment Corp.* (7th Cir. 1990) 900 F.2d 112, 114-115.)

1096 [prerequisites to application of equitable estoppel].) Additionally, defendants suggest that it was Miller Import's conduct, if anyone's, that might give rise to an estoppel. (See 29 U.S.C. §§ 1002(16)(A), (B) [plan "administrator" defined as person so designated under plan's governing instrument; absent specific designation, administrator is plan's sponsor, the employer], 1021, 1024 [administrator's filing, reporting, and disclosure duties].) These unsettled factual issues and insufficiently briefed legal arguments render this an inappropriate case in which to depart from the ordinary rule limiting an appellate decision to issues the parties raised below. (See *Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 340-341 [303 P.2d 738]; *Blatt* v. *Farley* (1990) 226 Cal.App.3d 621, 627 [276 Cal.Rptr. 612].)

 The Marshalls urge that when neither the employer purchasing the group insurance policy covering its employees nor the insurer or administrator of the policy complies with ERISA requirements, ERISA's objectives are not served by preemption of state law remedies. We cannot agree. Although failure to comply with ERISA's reporting requirements may subject the responsible fiduciaries to statutory penalties and liability for relief (see 29 U.S.C. §§ 1109, 1132(c)(2)), it does not deprive employees of their right to sue under ERISA to secure their benefits. (*Blau* v. *Del Monte Corp.* (9th Cir. 1984) 748 F.2d 1348, 1352; 29 U.S.C. § 1132(a)(1)(B).) Congress has clearly expressed its intent that the civil enforcement provisions of ERISA be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of claims for benefits. (*Commercial Life Ins. Co.* v. *Superior Court, supra,* 47 Cal.3d at p. 480.) ERISA's enforcement scheme carefully balances the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. (*Pilot Life Ins. Co.* v. *Dedeaux, supra,* 481 U.S. at p. 54 [95 L.Ed.2d at p. 52].)

### DISPOSITION

The judgment of the Court of Appeal is reversed.

Lucas, C. J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

**MOSK, J.**—I dissent. The majority misinterpret the holding of *Fort Halifax Packing Co.* v. *Coyne* (1987) 482 U.S. 1 [96 L.Ed.2d 1, 107 S.Ct. 2211] (hereinafter *Fort Halifax*), as well as other cases permitting preemption of

state law by the Employee Retirement Income Security Act (ERISA) only if the employer takes a substantial role in administering an insurance policy. Moreover, their conclusion that the employer in this case "established and maintained" an "employee benefit plan" is based on reasoning inconsistent on the face of the opinion.

In analyzing the preemption issue, it must be kept in mind the "basic assumption [is] that Congress did not intend to displace state law." (*Maryland* v. *Louisiana* (1981) 451 U.S. 725, 746 [68 L.Ed.2d 576, 595-596, 101 S.Ct. 2114].) The presumption applies most strongly where, as here, Congress legislates in an area traditionally occupied by the states (*Rice* v. *Santa Fe Elevator Corp.* (1947) 331 U.S. 218, 230 [91 L.Ed. 1447, 1459, 67 S.Ct. 1146]), such as tort law. Since there is a strong presumption against preemption, we should not, as the majority do, read the provisions of ERISA expansively, so as to enlarge the scope of its preemption language.

*Fort Halifax* (*supra,* 482 U.S. 1) is directly contrary to the majority's holding. In distinguishing that case, the majority rely on the fact that the severance payment there involved was made directly by the employer to the employee, rather than pursuant to an insurance policy. However, the rationale of that case cannot be so easily dismissed. Almost the entire analysis in the opinion relates to the purpose served by the preemption provisions of ERISA and the reason why that purpose is not violated unless the employer performs such administrative tasks as the calculation and payment of benefits pursuant to an "employee benefit plan."

The opinion in *Fort Halifax* provides three reasons in support of its conclusion that the Maine statute requiring payment of severance benefits in that case was not preempted by ERISA. First, ERISA does not preempt state laws that grant employee benefits, but only those that relate to an "employee benefit plan." (482 U.S. at p. 8 [96 L.Ed.2d at p. 9].) A payment to an employee that does not require ongoing administrative activity by the employer is not such a plan.

Second, one reason only an "employee benefit plan" is subject to preemption is that an employer who administers such a plan would be subject to state regulation, raising the prospect of a conflict between ERISA and state regulation. That is, an employer-administered plan would require the employer to perform functions like determining the eligibility of claimants and calculating benefit levels. The most efficient way to meet these obligations is to provide a set of standard procedures to guide the processing of claims and disbursement of benefits. This conduct would be subject to state regulatory requirements, thereby interfering with ERISA's goal of assuring that administrative practices of a benefit plan will be governed by a single set of

regulations. (*Fort Halifax, supra,* 482 U.S. at pp. 8-14 [96 L.Ed.2d at pp. 9-13].)

Third, the statute was not preempted by ERISA because the severance payment did not implicate a second concern of the preemption provision, namely, the regulatory purposes of ERISA. The fiduciary standards contained in the federal legislation were designed to safeguard employees who were the beneficiaries of an "employee benefit plan" from such abuses by an employer as self-dealing, imprudent investment, and misappropriation of plan funds. "Only 'plans' involve administrative activity potentially subject to employer abuse." (*Fort Halifax, supra,* 482 U.S. at p. 16 [96 L.Ed.2d at p. 16].) Without such activity by the employer, "[i]t would make no sense for pre-emption to clear the way for exclusive federal regulation, for there would be nothing to regulate." (*Ibid.*)

In sum, *Fort Halifax* holds that state laws are not preempted by ERISA unless the employer administers an "employee benefit plan," because it is only such administration that would violate the dual purpose of the preemption provision, i.e., the avoidance of conflict between state and federal regulations governing administration of the plan, and the danger that the employer might abuse its administrative function.

The dissenting opinion in *Fort Halifax* also understands the majority as holding that the issue of preemption turns on whether the employer has established an "administrative scheme" for paying benefits. ("I dissent because it is incredible to believe that Congress intended that the broad preemption provision contained in ERISA would depend upon the extent to which an employer exercised administrative foresight in preparing for the eventual payment of employee benefits." (*Fort Halifax, supra,* 482 U.S. 1, 23 [96 L.Ed.2d at p. 19], dis. opn. of White, J.)

The majority in the instant case barely mention the high court's reasoning in *Fort Halifax.* Instead, they attempt to distinguish the decision on the ground that the employer there paid the severance benefit directly to the employee. This attempted distinction is patently invalid. The reason the severance payment in that case did not invoke preemption, as the court expressly stated, was because it did not require administration by the employer; it was not, as the majority here claim, because the payment was made directly to the employee by the employer. "Some severance benefit obligations by their nature necessitate an ongoing administrative scheme, but others do not. Those that do not, such as the obligation imposed in this case, simply do not involve a state law that 'relate[s] to' an employee benefit 'plan.' " (*Fort Halifax, supra,* 482 U.S. at p. 18 [96 L.Ed.2d at pp. 15-16].)

If anything, direct payment by the employer is more likely to indicate preemption under the Supreme Court's rationale than indirect payment, such as payment by an insurer. The court describes the type of activities of an employer that will invoke federal preemption, as follows: Preemption occurs if the employer "makes a commitment systematically *to pay certain benefits*" by undertaking such activities as "determining the eligibility of claimants, calculating benefit levels, *making disbursements* . . . and keeping appropriate records in order to comply with applicable reporting requirements." (*Fort Halifax, supra,* 482 U.S. at p. 9 [96 L.Ed.2d at p. 10], italics added.) Thus, the employer who pays the employee directly is, under the Supreme Court's analysis, more involved in administration of a benefit plan and therefore more likely to invoke preemption than one who pays a benefit only by purchasing a policy of insurance.

No case, so far as I am aware, has interpreted the holding of *Fort Halifax* as being confined merely to cases in which the employer made direct payment to the employee, nor is there any authority for the proposition that employer administration of a policy is irrelevant to the issue of preemption. A number of cases following the high court's decision have properly viewed it as standing for the proposition that an employer's involvement in plan administration is the touchstone of the preemption analysis. (*Gahn* v. *Allstate Life Ins. Co.* (5th Cir. 1991) 926 F.2d 1449, 1452 [although the court ultimately concluded that the record was insufficient to enable it to decide whether a benefit plan was involved, the principle that the employer's "involvement with the administration of the plan" is the determining factor in the preemption analysis was clearly stated]; *Taggart Corp.* v. *Life & Health Benefits Admin.* (5th Cir. 1980) 617 F.2d 1208, 1210-1211; *Turnbow* v. *Pacific Mut. Life Ins. Co.* (Nev. 1988) 104 Nev. 676 [765 P.2d 1160, 1161]; *Lambert* v. *Pacific Mutual Life Ins. Co.* (1989) 211 Cal.App.3d 456, 463-465 [259 Cal.Rptr. 398]; *Rizzi* v. *Blue Cross of So. California* (1988) 206 Cal.App.3d 380, 389 [253 Cal.Rptr. 541] ["the line of demarcation between ERISA plans and non-ERISA plans depends on the level of involvement by the employer in the program so as to warrant federal regulation of the administrative integrity of the program"].)

Furthermore, the majority's reasoning is inconsistent on its face. While it concedes that the mere purchase of insurance does not establish a plan, it effectively holds that preemption occurs if the employer does no more than make such a purchase. Thus, it concludes that a plan exists if a "reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." I fail to see how an employer can purchase any insurance without the specification of these details.

The majority's conclusion that the employer in this case did more than merely purchase insurance suffers from the same defect. Its conclusion is

based on the following factors: The employer (1) selected the policy from among other available policies, (2) chose to provide health care benefits to all of its employees at its own cost and to provide the opportunity for dependent coverage, (3) paid the monthly premiums, (4) submitted enrollment cards and forms for changes of beneficiary to the administrator, and (5) cancelled the policy after six months and substituted another policy from a different insurer. Aside from number 4 on this list, an employer who makes a "bare purchase" of insurance must perform all these tasks, assuming that it has the power to cancel the policy, as the employer had in this case.[1] That is, the employer cannot purchase insurance without choosing a policy and paying the premiums. Only the fact that the employer submitted enrollment and change of beneficiary forms to the insurer's administrator goes beyond "mere purchase." The notion that an insurer is totally immunized from liability under state law because the employer rather than the employee transmits these routine forms to the insurer is incomprehensible.

The same problem with the majority's reasoning is evident in its conclusion that the employer "established and maintained" an ERISA plan because it purchased a group insurance policy, contributed to premiums and remitted them to the insurer, and retained the authority to terminate it. How can an employer purchase a policy without complying with these requirements?

Today's decision deprives countless Californians defrauded by insurers of the protection afforded by state law. It is ironic indeed that a federal statute designed to defend the interests of insured employees is construed to sanction such a result. Sadly, it bears repeating, as stated in my dissent in *Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 416 [257 Cal.Rptr. 292, 770 P.2d 704], "in this court, the insurer wins and the insureds lose."

I would affirm the judgment of the Court of Appeal.

---

[1]The fact that the employer was not obligated to continue to provide health benefits weighs against preemption. (*Donovan* v. *Dillingham* (11th Cir. 1982) 688 F.2d 1367, 1374-1375.)