[Civ. No. 58809. Second Dist., Div. Five. Nov. 7, 1980.]

DENISE MOLINA, a Minor, etc., et al., Plaintiffs and Appellants, v. RETAIL CLERKS UNIONS AND FOOD EMPLOYERS BENEFIT FUND, Defendant and Respondent.

---

---

COUNSEL

Eckert, O'Gorman & McFarland and Charles V. Eckert III for Plaintiffs and Appellants.

Schwartz, Steinsapir, Dohrmann & Krepack, Kenneth M. Schwartz, Richard D. Sommers and Stuart Libicki for Defendant and Respondent.

---

OPINION

CARDENAS, J.*—

I

Plaintiffs appeal from a judgment granting the defendant, Retail Clerks Unions and Food Employers Benefit Fund, reimbursement for medical expenses paid by the fund on behalf of the plaintiffs from plaintiffs' settlement with third party tortfeasors.[1]

II

FACTS

On May 2, 1975, plaintiff, Denise Molina, the daughter of Michael Molina, was seriously injured when a motorist struck her as she was walking in a crosswalk at State and Mission Streets in Santa Barbara.

A complaint was filed to recover damages for Denise's personal injuries. The defendants in that lawsuit were the driver of the vehicle which

---

*Assigned by the Chairperson of the Judicial Council.

[1]Respondents do not appeal from that portion of the judgment that reduced its recovery by a pro rata share of attorney's fees incurred by the plaintiff, therefore we expressly do not decide that question.

struck Denise, his parents, the City of Santa Barbara, and the owners of property adjacent to the scene of the accident.

The driver and his parents had only $15,000 of insurance coverage. Imposition of liability on the City of Santa Barbara, and the adjacent land owners was doubtful.

At the time of Denise's accident, Michael Molina, as a member of the Retail Clerks Union, Local 899, was covered by the collective bargaining agreement denominated the retail food, bakery, candy and general merchandise agreement. Pursuant to the eligibility rules, Denise, his dependent, was eligible for medical benefits from the defendant's medical fund. Benefits in the amount of $8,385.23 were paid by the fund to Denise's medical providers.

### III

On September 22, 1975, plaintiffs filed a complaint asking for declaratory relief with respect to the nature and extent of defendant's right to reimbursement for medical expenses paid by defendant in the event plaintiffs recovered from third party tortfeasors. Subsequent to the filing of the complaint and prior to the entry of the court's judgment, plaintiffs settled the case against several defendants for the total sum of $19,000, which was substantially less than the value of the injuries she sustained.

On October 19, 1979, after a court trial, findings of fact and conclusions of law were filed without timely objection. Judgment was granted against the plaintiff in the sum of $5,228.05. (I.e., $8,385.23 less a pro rata share of attorney's fees and costs resulting in a net recovery of $5,228.05.)

### IV

The court's findings of fact and conclusions of law were numerous and included among them the following: 1. At the time of the accident, Michael Molina, as a Retail Clerks Union member was covered by the merchandise agreement dated April 1, 1972, through March 31, 1975. The agreement was extended in 1974 through July 27, 1975. As a result of Michael Molina's status, his dependent, Denise, was eligible for medical benefits from the benefit fund. Benefits in the amount of $8,385.23 were therefore paid by the benefit fund directly to the medical providers pursuant to the applicable medical program.

2. The benefit fund was first established in April 1964. Under the trust agreement, the trustees of the benefit fund were empowered to pay benefits directly to beneficiaries or providers of such benefits based on the rules of eligibility and regulations established by the trustees. The rules and regulations established by the trustees were conclusive upon the rights of all beneficiaries to participate in benefits and compliance in full with the terms and conditions established by the rules and regulations were a condition precedent to eligibility of any person or benefits.

3. Benefits are financed by contributions from employers in accordance with the terms of the retail food, bakery, candy and general merchandise agreement between the Retail Clerks Union Locals, including Local 899, and the Food Employers Council, Inc. and independent retail operators. The benefit fund functions as a separate entity under the direction of a board of trustees consisting of union and management representatives with equal voting rights pursuant to section 302 of the Labor Management Relations Act, as amended.

4. On January 15, 1970, the trustees adopted the following regulation reaffirming their policy on third party liability cases.

"Resolved, that in all cases in which a beneficiary of this fund incurs any illness, injury, disease or other condition for which a third party may be liable or legally responsible by reason of negligence or other legal cause on the part of such third party, such beneficiary, as a condition precedent to entitlement to benefits from this trust fund, shall be required to execute an assignment to this fund of all proceeds received by way of judgment, settlement or otherwise in connection with, or arising out of any claim for damages by such beneficiary or his heirs, parents or legal guardians, in an amount equal to but not in excess of the payments made or to be made by the trust fund on account of medical, hospital, surgical, dental and other expenses in connection with, or arising out of, any injury, illness, disease or other condition for which the third party may be responsible."

5. A pamphlet issued by the fund contained the following language: "E. THIRD PARTY LIABILITY Any eligible person enrolled in the indemnity plan of medical and hospital benefits will, in the event of injury involving third party liability, be requested to complete an assignment before benefits are paid. The assignment will require the member to pay or cause to be paid to the Benefit Fund any monies which he may re-

cover from a third party up to, but not in excess of, the amounts which the Fund may pay in his behalf for medical, hospital, surgical, and other expenses in connection with these injuries."

6. The fair value of Denise's claim for damages for personal injuries was at least $40,000.

7. Denise Molina incurred reasonable attorneys' fees, costs, and legal expenses in connection with effecting said recovery. (33-1/3 percent of net recovery.)

## V

Plaintiffs appeal on the following grounds: (citing state court cases applicable to insurance companies.)

1. Where the insured acts in good faith and the insurer does not participate or assist in collection of the amount paid by the wrongdoer, the insurer's recovery is limited to the amount by which the sum received, together with the insurance proceeds, exceeds the loss and expenses incurred by the insured in realizing on the claim against the wrongdoer. (*American Automobile Fire Ins. Co.* v. *Speiker* (1933) 97 Ind.App. 533 [187 N.E. 355].)

2. That the defendant did not participate in the action to recover from the third party tortfeasors; therefore, is precluded from recovery. (*American Automobile Fire Ins. Co., supra.*)

3. The insurer's right to subrogation only arises where the insurer participates or assists in the collection from the third party. (*Peterson* v. *Ohio Farmers Ins. Co.* (1963) 175 Ohio St. 34 [23 Ohio Ops.2d 311, 191 N.E.2d 157]; *Travelers Indem. Co.* v. *Ingebretsen* (1974) 38 Cal. App.3d 858 [113 Cal.Rptr. 679].)

4. As between the insured and the insurer, if either must bear the loss, it should be borne by the insurer as that is the risk that the insured paid it to assume. (*St. Paul Fire & Marine Ins. Co.* v. *W. P. Rose Supply Co.* (1973) 19 N.C.App. 302 [198 S.E.2d 482].)

5. If the insurer is entitled to recovery, it should be based upon equitable consideration. Pro rata distribution should be available in the

event the insured recovers less than his loss. (Lab. Code, § 4903.1; *St. Paul Fire and Marine Ins. Co., supra.*)

6. The result of the lower court's decision allows the insurer to profit at the risk of its insured.

## VI

For the first time on appeal, respondent raises the question of substantive preemption. It argues that the respondent benefit fund is an employee-benefit plan subject to regulation under the Employee Retirement Insurance Security Act of 1974 (29 U.S.C. § 1001 et seq.—hereinafter referred to as ERISA) and thus preempts California law to the extent that California courts shall not impose California law to regulate respondent benefit plans.

## VII

Before we discuss that argument, it is necessary to determine whether the issue of substantive preemption may be raised for the first time on appeal. ▮ The general rule is that matters not raised in the trial level shall not be permitted to be raised for the first time on appeal. The rule confining the parties upon appeal to the theory or theories advanced below is based on the rationale that the opposing party shall not be required to defend for the first time on appeal against a new theory that contemplates *a factual situation*, the consequences of which are open to controversy and were not put in issue or presented at the trial. (*Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534]; *Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 340-341 [303 P.2d 738]; *Burdette* v. *Rollefson Construction Co.* (1959) 52 Cal.2d 720 [344 P.2d 307, 310].)

We have concluded that there is no dispute with respect to the underlying facts of this case. The respondent merely raises a new question of law. In its findings of fact, the trial court expressly concluded that the respondent benefit fund was established pursuant to section 302 of the Labor Management Relations Act. (29 U.S.C. § 186.)

Title 29 United States Code section 1003(a) provides that ERISA "shall apply to any employee benefit plan if it is established or maintained (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or (2) by any employee organization or organizations representing employees engaged in commerce or in any

industry or activity affecting commerce; or (3) by both." From the findings of facts it is clear that the funds in question fall within the guidelines of the statute.

In *Hewlett-Packard Co.* v. *Barnes* (9th Cir. 1978) 571 F.2d 502, the court addressed the problem of preemption and stated as follows: "The clear wording of section 514 [29 U.S.C. § 1144] and the relevant legislative history show that Congress unmistakably intended ERISA to preempt...state law...that directly regulates employee benefit plans." (571 F.2d at p. 504.) Title 29 United States Code section 1144(b)(2) (B); specifically states that an employee benefit plan shall *not* be deemed to be an insurance company or other insurer or to be engaged in the business of insurance for the purposes of any law of any state purporting to regulate insurance companies or insurance contracts. (*Hewlett-Packard Co.* v. *Barnes, supra.*)

■ From the undisputed facts and the relevant law in this case, we conclude that state courts are restrained in this area and even though trial courts have subject matter jurisdiction over this litigation pursuant to 29 United States Code section 1132(e)(I), the application of state law is preempted. ■ The facts upon which the respondent bases its legal theory of preemption are undisputed and therefore respondent can validly raise the argument for the first time on appeal.

## VIII

■ Under federal substantive law, the benefit fund regulation regarding reimbursement is an appropriate condition precedent to the appellant's eligibility for benefits.

The rule governing judicial review of actions taken by the trustees of Taft-Hartley and ERISA covered employee welfare benefit and pension plans is set forth in *Giler* v. *Board of Sheet Metal Workers of So. Cal.* (9th Cir. 1975) 509 F.2d 848. The court held as follows at page 849: "The trustees of a pension plan established under 29 U.S.C. § 186(c)(5) have broad discretion in setting eligibility rules. A court should interfere only when the rule is unreasonable or its enforcement arbitrary."

A further expression of this principle is illustrated again in *Rehmar* v. *Smith* (9th Cir. 1977) 555 F.2d 1362, where the court stated as follows: "Where, however, the instrument defining the fiduciaries' duties gives them broad discretion, as is generally the case with welfare and

pension trusts, the courts limit their review and intervene in the fiduciaries' decisions only where 'they have acted arbitrarily or capriciously towards one of the persons to whom their trust obligations run.' We find this standard of judicial review, which leads neither to abdication of traditional judicial control of fiduciaries nor to excessive judicial intervention in trust operations, in harmony with federal labor policy." (555 F.2d at p. 1371.)

The trial court's scope of review of a decision made by the trustees of a benefit plan is greatly limited. In essence, this limitation precludes the court from substituting its own judgment for that of the trustees unless the decision of the trustees was arbitrary, capricious or made in bad faith. (*Brauer* v. *Sheet Metal Workers' Pension Plan* (1978) 82 Cal. App.3d 159, 165 [146 Cal.Rptr. 844, 848]; *French* v. *Construction Laborers Pension Trust* (1975) 44 Cal.App.3d 479 [118 Cal.Rptr. 731].)

Appellants have not alleged nor made a showing that the trustees acted arbitrarily, capriciously, or in bad faith, therefore their actions are not subject to judicial review. (*Brauer* v. *Sheet Metal Workers' Pension Plan, supra*, at p. 165.)

The trial court made a specific finding that the trustees' resolution with regard to third party liability cases and the obligation to reimburse the fund adopted on January 15, 1970, was "conclusive upon its right of all beneficiaries to participate in benefits and in compliance in full with the terms and conditions established by its rules and regulations was a condition precedent to eligibility of any person for benefits."

The plaintiffs are therefore obligated to reimburse the fund, without reduction, to the extent that they received benefits.

We conclude that the trial court's judgment was correct.

The judgment is affirmed.

Kaus, P. J., and Hastings, J., concurred.