[No. B055173. Second Dist., Div. Seven. Sept. 24, 1992.]

CARL A. DEARTH et al., Plaintiffs and Appellants, v.
GREAT REPUBLIC LIFE INSURANCE COMPANY et al., Defendants
and Respondents.

**COUNSEL**

Shernoff & Scott and Marian H. Tully for Plaintiffs and Appellants.

Baltaxe & Baltaxe, Michael F. Baltaxe, Buxbaum & Chakmak and John Chakmak for Defendants and Respondents.

**OPINION**

**WOODS (Fred), J.—**

I.

INTRODUCTION

Appellants, Carl A. Dearth and Kara Dearth (Dearths) brought the underlying action in the Superior Court of the County of Los Angeles against respondent Great Republic Life Insurance Company (Great Republic) and respondents David A. Nagler and Nagler & Nagler Insurance Agency (Nagler). The underlying action involves a policy of group health insurance (the Policy) issued by Great Republic to Dearth's employer Pacemaker Enterprises Inc. (Pacemaker), a California corporation, covering Pacemaker's employees.

Nagler acted as Great Republic's agent in introducing the Policy to Pacemaker and its employees. Great Republic eventually refused to pay the

Dearths certain benefits under the Policy, and Dearth brought suit against Great Republic and Nagler on a variety of related theories.

Great Republic moved for summary judgment below on the grounds that all of the claims of Dearth against it were preempted by virtue of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.). Nagler joined in Great Republic's Motion on the grounds that if the Policy is ERISA regulated, all causes of action against Nagler are also preempted. The trial court granted summary judgment for both Great Republic and Nagler on grounds of ERISA preemption. This appeal followed.

## II.

### STATEMENT OF FACTS

Pacemaker, which is in the business of general contracting, selected group health insurance coverage offered by Great Republic. Pacemaker made arrangements for Nagler to make a presentation to Pacemaker's employees at Pacemaker's place of business on the subject of group health insurance to be provided by Great Republic for the employees of Pacemaker. On January 25, 1985, the employees of Pacemaker met with David Nagler at Pacemaker's place of business, and the employees applied to Great Republic for group health insurance coverage known as "The Solution Plan" for a policy of insurance for Pacemaker's employees.

Carl A. Dearth was employed by Pacemaker during the period from January 7, 1985, to February 15, 1986. On January 25, 1985, the Dearths made written application to Great Republic with the other Pacemaker employees for group health insurance coverage. A copy of the Dearths' application (the Application) for group health insurance to Great Republic is included in the record on appeal.

With the applications for insurance by its employees, including the Dearths' application, Pacemaker submitted its check in the amount of $892 for the first month's premium for the Dearths and the other employees.

The Dearths' application, as well as the applications of the other employees of Pacemaker, was approved by Great Republic and insurance coverage was issued for the employees of Pacemaker by Great Republic effective March 1, 1985, policy No. SCAS 20791. A copy of the policy certificate booklet issued for the Dearths is included in the record on appeal. The Dearths' second amended complaint contains allegations that "GREAT REPUBLIC issued a group medical and hospital insurance policy No.

SCAS20791 . . . to Pacemaker Enterprises . . . covering plaintiffs . . . as members of the group." Insurance coverage for the Dearths under the Policy was issued only after Great Republic reviewed and approved the Dearths' application.

During the period of time that Carl A. Dearth was employed by Pacemaker, it was the policy of Pacemaker to provide its employees and their dependents with an employee benefit package, including group health insurance, vacation, and sick leave benefits. There was an agreement to provide the Policy benefits as part of the employment relationship between Pacemaker and its employees. Pacemaker made the monthly premium payments for group insurance coverage under the Policy for its employees. Effective March 1, 1985, Pacemaker provided group health insurance coverage under the Policy to the Dearths as a benefit of Carl A. Dearth's employment with Pacemaker. Kara Dearth was insured under the Policy as a dependent of Carl A. Dearth.

Pursuant to the Application, billings for the monthly insurance premiums for the Dearths' insurance coverage under the Policy were sent to and paid by Pacemaker. If Pacemaker failed to make the monthly premium payments, insurance coverage under the Policy for Pacemaker's employees and their dependents would automatically terminate. Pacemaker made the decision to cancel the Policy for its employees and their dependents. Pacemaker had certain duties with regard to administering the Policy. Those duties included the following:

1. Selection and endorsement of the Policy;

2. Verification of eligibility of employees for insurance coverage under the Policy and Policy benefits;

3. Adding and deleting employees from the Policy by giving appropriate notice to Great Republic;

4. Obtaining and submitting applications for insurance coverage from employees to be insured under the Policy;

5. Advising employees to complete claim forms;

6. Distributing certificate booklets to employees describing the Policy benefits;

7. Reviewing monthly premium billings from Great Republic for accuracy and reporting any errors to Great Republic;

8. Paying a monthly fee to Great Republic for administration of the Policy by Great Republic for Pacemaker;

9. Corresponding with Great Republic regarding Policy benefits for employees.

10. Designating the insurance agent who would service the Policy with respect to employees.

The Application contains misrepresentations or concealment of material facts in that the Dearths knew that Kara Dearth was pregnant at the time the Application was completed. Had Great Republic known that Kara Dearth was pregnant, it would have refused to issue insurance coverage for the Dearths and the Application so states.

The claims of the Dearths for Policy benefits at issue in this action are for the childbirth of their son on June 18, 1985, and for charges incurred as the result of treatment rendered to Baby Boy Dearth from his birth on June 18, 1985, until his death on July 19, 1985. Great Republic's investigation of the Dearths' insurance claims revealed that Baby Boy Dearth was born with a 35-week gestation period, that Kara Dearth was first seen for her pregnancy on November 24, 1984, and that she tested positive for pregnancy on January 2, 1985 (about 3 weeks before the application was completed). Baby Boy Dearth was born with severe congenital defects, including lung disease, pneumonia, and emphysema.

The Policy specifically provides that maternity insurance is not covered. The Policy specifically excludes pregnancy benefits, and the Policy contains a preexisting condition limitation which would also apply to exclude pregnancy benefits for Kara Dearth.

The Policy requires that newborn infants must be enrolled for insurance coverage under the Policy within 30 days of birth or have a completed health statement submitted for acceptance by Great Republic. Baby Boy Dearth was never enrolled for insurance coverage under the Policy, nor was any health statement ever submitted to Great Republic for him.

### III.

#### PROCEDURAL HISTORY

On June 25, 1986, the Dearths filed their complaint in this action. The Dearths filed a first amended complaint on July 3, 1986, and a second

amended complaint on April 14, 1987. The Dearths' second amended complaint contains causes of action against Great Republic for breach of the duty of good faith and fair dealing, breach of statutory duties, and breach of contract. The Dearths' second amended complaint also contains causes of action against Nagler for breach of statutory duties, negligence, and breach of fiduciary duty.

Great Republic took the deposition of the designated representative of Pacemaker, John Charles Smida, on June 15, 1990. The deposition subpena for the designated representative of Pacemaker specifically requested records relating to employee benefits and any employee benefit plan maintained by Pacemaker for its employees.

After discovering the existence of an employee benefit plan as a result of Mr. Smida's deposition, Great Republic also took other depositions. On July 10, 1990, Great Republic took the depositions of Stephen Adams, Elizabeth Adams and Robert King. Mr. Adams is the owner and president of Pacemaker. Mrs. Adams was the office manager and the secretary/treasurer of Pacemaker. Mr. King is the vice-president of Pacemaker.

Having discovered the existence of ERISA preemption as a result of the deposition of John Charles Smida and the other depositions described above, on June 21, 1990, Great Republic filed its motion for summary judgment or summary adjudication of issues.

Nagler filed a notice of joinder in Great Republic's summary judgment motion. The summary judgment motion was heard on July 24, 1990. At the time of the hearing, the Dearths' attorney requested "leave to amend this to state an action under ERISA." The court told the Dearths' attorney to "go ahead and file whatever papers are necessary." Great Republic's summary judgment motion was granted. The summary judgment motion was submitted as to Nagler and subsequently granted as to Nagler. Judgment was entered in favor of Great Republic on October 4, 1991. Although over two months elapsed between the time of the hearing on the summary judgment motion and the entry of judgment, the Dearths never filed any motion to amend their pleadings as permitted by the court.

Although the Dearths opposed Great Republic's motion for summary judgment, they did not assert in the trial court that ERISA is an affirmative defense which must be alleged nor did they assert any lack of notice or prejudice on the issue of ERISA preemption. In fact, in their opposition to Great Republic's summary judgment motion, the Dearths asserted that the superior court had jurisdiction over their claims for ERISA plan benefits.

IV.

ISSUES ON APPEAL

The Dearths frame the issues on appeal in the following manner:

"1. Where the facts upon which a determination of the existence of an employee benefit plan are disputed is summary judgment based on ERISA preemption proper?

"2. When an insured has alleged an action for breach of contract against an insurer and the state court has concurrent jurisdiction to resolve claims for benefits under an ERISA plan, is summary judgment proper when there has been no determination of whether any benefits are due?

"3. Where separate causes of action against an insurance agent are alleged which are based on the conduct of the agent before the inception of the insurance policy, is summary judgment on the basis of ERISA preemption proper?"

V.

DISCUSSION

A. *ERISA Preempts Common Law and Statutory Claims for Relief.*

■ ERISA limits plan participants and beneficiaries, such as the Dearths, to causes of action for recovery of policy benefits only. (29 U.S.C. § 1132(a)(1)(B).) In particular, ERISA does not allow a plan participant or beneficiary to seek or obtain any general or punitive damages as alleged in the Dearths' second amended complaint.

In the landmark decision of *Pilot Life Ins. Co.* v. *Dedeaux* (1987) 481 U.S. 41 [95 L.Ed.2d 39, 107 S.Ct. 1549], the United States Supreme Court held that ERISA preempts all common law causes of action for breach of contract and tort as against an insurance company which issues a group insurance policy for the benefit of an employer or its employees. The holding in *Pilot Life*, was reaffirmed by the United States Supreme Court in *Metropolitan Life Ins. Co.* v. *Taylor* (1987) 481 U.S. 58 [95 L.Ed.2d 55, 107 S.Ct. 1542], as well as by various federal courts, including the Ninth Circuit Court of Appeals in *Kanne* v. *Connecticut General Life Ins. Co.* (9th Cir. 1988) 867 F.2d 489.

In *Pilot Life*, the Supreme Court held that Congress carefully drafted ERISA civil enforcement remedies with the intention that they be exclusive.

This was done to provide uniformity in the obligations and liabilities imposed upon administrators and fiduciaries in ERISA situations. The court in *Pilot Life* concluded: "In sum, the detailed provisions of [section 1132(a)] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." (*Pilot Life Ins. Co.* v. *Dedeaux, supra*, 481 U.S. at p. 54 [95 L.Ed.2d at p. 52].) Thus, in *Pilot Life*, the Supreme Court held that common law bad faith claims and other common law causes of action are preempted by ERISA.

In *Commercial Life Ins. Co.* v. *Superior Court* (1988) 47 Cal.3d 473 [253 Cal.Rptr. 682, 764 P.2d 1059], the California Supreme Court reaffirmed that ERISA preempts all common law and statutory claims arising from an employee benefit plan, including claims based upon Insurance Code section 790.03, and other common law causes of action involving insurance. In *Commercial Life*, the employer of the real party in interest, Joseph V. Juliano, sponsored an employee benefit plan for group insurance underwritten by Commercial Life Insurance Company. Juliano's claims for health insurance benefits submitted to Commercial Life were denied. Thereafter, Juliano filed an action which attempted to state causes of action for bad faith, waiver, estoppel, and violation of Insurance Code section 790.03. The California Supreme Court held ERISA preempts all private causes of action, including actions brought under Insurance Code section 790.03, where the action asserts a claim arising from an employee benefit plan. (47 Cal.3d at p. 484.)

All other recent California Court of Appeal decisions involving this issue have upheld ERISA preemption of common law causes of action involving claims under group health insurance policies. (*See Rizzi* v. *Blue Cross of So. California* (1988) 206 Cal.App.3d 380 [253 Cal.Rptr. 541] and *Lambert* v. *Pacific Mutual Life Ins. Co.* (1989) 211 Cal.App.3d 456 [259 Cal.Rptr. 398].)

The Dearths admit that ERISA preempts common law and statutory claims for relief. However, they deny that an employee welfare benefit plan exists in this case so as to create ERISA preemption.

B. *The Insurance Coverage at Issue in This Action Is Part of an Employee Welfare Benefit Plan Subject to ERISA.*

In *Donovan* v. *Dillingham* (11th Cir. 1982) 688 F.2d 1367, the United States Court of Appeals conducted a detailed analysis of the definition of an

"employee welfare benefit plan" under the terms of ERISA with respect to the purchase of insurance by an employer for its employees. The court in *Donovan* concluded that the purchase of group health insurance by an employer constituted an employee welfare benefit plan as that term is defined by ERISA. The court stated: "ERISA § 3(1), 29 U.S.C., § 1002(1) defines 'employee welfare benefit plan' or 'welfare plan' as [¶] any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ." (*Id.*, at pp. 1370-1371.)

■■■ ERISA does not however require a formal written plan, ERISA's coverage provision reaches any employee benefit plan if it is established or maintained by an employer or an employee organization. (688 F.2d at pp. 1370-1373.)

In addressing whether a group insurance policy is part of an ERISA plan when provided by an employer for its employees, the United States Court of Appeals in *Kanne* v. *Connecticut General Life Ins. Co., supra*, 867 F.2d 489, stated: "The Department of Labor has issued regulations excluding certain group insurance programs from ERISA's definition of 'employee welfare benefit plan':

"(j) Certain group or group-type insurance programs. For purposes of Title I of the Act and this chapter, the terms 'employee welfare benefit plan' and 'welfare plan' shall not include group or group-type insurance programs offered by an insurer to employees or members of an employee organization, under which

"(1) No contributions are made by an employer or employee organization;

"(2) Participation in the program is completely voluntary for employees or members;

"(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; *and*

"(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than

reasonable compensation, excluding any profit, or administrative services actually rendered in connection with payroll deductions or dues checkoffs." (Original italics deleted and italics added.) (*Id.*, at p. 492.)

The courts in *Kanne, Rizzi,* and *Hughes* v. *Blue Cross of Northern California* (1989) 215 Cal.App.3d 832 [263 Cal.Rptr. 850], discussed the regulations contained in 29 Code of Federal Regulations, section 2510.3-1(j), issued by the Department of Labor, which exclude certain group insurance programs from ERISA's definition of an employee welfare benefit plan. That regulation provides that if *all four* elements described in the regulation *do not exist*, then an employee welfare benefit plan *may* not exist. As discussed below, three of the four elements contained in 29 Code of Federal Regulations, section 2510.3-1(j) exist in this case.

### 1. *Contributions were made by Pacemaker for purchase of the Policy*

Contributions were made by Pacemaker to the insurance program which it offered to its employees in the form of the Policy. (29 C.F.R. § 2510.3-1(j)(1).) The undisputed evidence in this case is that Pacemaker obtained the Policy benefits for its employees and their dependents and paid for all of the insurance premiums for its employees, including Carl A. Dearth. Carl A. Dearth could not have been insured under the Policy but for his employment with Pacemaker. Although Carl A. Dearth paid the insurance premium for his dependents, including Kara Dearth, through payroll deductions made by Pacemaker, those dependents were not eligible for Policy benefits except through the Policy purchased by Pacemaker for its employees. Thus, the dependents of Carl A. Dearth, including Kara Dearth, were beneficiaries of the group health insurance program established by Pacemaker because they could not have obtained any insurance coverage under the Policy but for the fact that Carl A. Dearth's employer obtained the Policy benefits for its employees and their dependents. The depositions of the president, secretary/treasurer, vice-president, and designated representative deponent of Pacemaker demonstrate that Pacemaker purchased the Policy for the purpose of providing employee benefits to its employees, *including* the dependents of employees because employees had the right to insure their dependents under the Policy by paying premiums for their dependents.

In *Lambert* v. *Pacific Mutual Life Ins. Co., supra,* 211 Cal.App.3d 456, the plaintiff was the dependent of the insured employee, and the employer did not pay the premium for dependent coverage, just as in this case. In *Lambert,* the court had no trouble in finding the existence of an employee benefit plan subject to ERISA preemption in upholding the granting of a summary

judgment motion in favor of the defendant insurer. The facts in *Lambert* are identical to this case with respect to the nonpayment of premium for the dependent insured, and *Lambert* disposes of the contention made by the Dearths that Pacemaker's failure to pay the premium for Kara Dearth or other dependents of Carl A. Dearth defeats the first of the four criteria contained in 29 Code of Federal Regulations, section 2510.3-1(j).

2. *Carl A. Dearth's participation in the Policy was not completely voluntary*

■ Carl A. Dearth's participation in the employee benefit program represented by the Policy was not completely voluntary. (29 C.F.R. § 2510.3-1(j)(2).) If participation in the Policy was not completely voluntary, then the second element does not exist, and an employee welfare benefit plan exists. The undisputed evidence in this case is that Pacemaker obtained the Policy benefits for its employees and paid for all of the insurance premiums for its employees, including Carl A. Death. Carl A. Dearth's participation in the Policy was not completely voluntary because the Policy benefits were automatically provided to him as part of his employment relationship with his employer.

3. *Pacemaker endorsed the Policy and performed administrative functions regarding the Policy*

■ The sole functions of Pacemaker with respect to the Policy were more than, without endorsing the Policy, to permit the insurer to publicize the Policy to employees and to collect premiums through payroll deductions and remit them to the insurer. (29 C.F.R. § 2510.3-1(j)(3).) The only significantly disputed material facts regarding the summary judgment motion concern whether or not Pacemaker endorsed the Policy and had the responsibility to perform and performed administrative functions regarding the Policy. The evidence presented both in support of and in opposition to the summary judgment motion overwhelmingly demonstrates that such facts exist. Those facts include the following:[1]

1. Pacemaker selected and endorsed the Policy;

2. Pacemaker verified eligibility of employees for insurance coverage under the Policy and Policy benefits;

---

[1] In *Marshall* v. *Bankers Life & Casualty Co.* (1992) 2 Cal.4th 1045, 1057 [10 Cal.Rptr.2d 72, 832 P.2d 573], based on a similar fact pattern, even though the employer's role in the administration of the policy was minor, the Supreme Court concluded that "an employer that—in order to provide its employees with any of the benefits specified in ERISA—purchases a group insurance policy, contributes toward premiums and remits them to the insurer, and retains authority to terminate the policy or change its terms 'has established or maintained' an ERISA plan regardless of whether it also processes claims or otherwise administers the policy."

3. Pacemaker added and deleted employees from the Policy by giving appropriate notice to Great Republic;

4. Pacemaker obtained and submitted applications for insurance coverage from employees to be insured under the Policy;

5. Pacemaker advised employees to complete claim forms;

6. Pacemaker distributed certificate booklets to employees describing the Policy benefits;

7. Pacemaker reviewed monthly premium billings from Great Republic for accuracy and reported any errors to Great Republic;

8. Pacemaker paid a monthly fee to Great Republic for administration of the Policy by Great Republic;

9. Pacemaker corresponded with Great Republic regarding Policy benefits for employees;

10. Pacemaker designated the insurance agent who would service the Policy with respect to employees.

Pacemaker "endorsed" the Policy by the fact that it contacted David Nagler for the purpose of making a presentation to Pacemaker and its employees regarding the Policy, had Mr. Nagler make the presentation to Pacemaker's employees at Pacemaker's place of business, decided it would purchase the Policy for its employees, and paid the premiums for its employees. As noted in *Hughes* v. *Blue Cross of Northern California, supra*, 215 Cal.App.3d 832, the fact that an employer pays premiums for group health insurance for its employees is strong evidence that the employer "endorsed" the Policy and that participation in the insurance plan was not voluntary.

In *Hughes*, the court stated as follows: "Mrs. Hughes vigorously contests these indications that the employer paid premiums under the insurance agreement. In addition, she argues that the record is silent with respect to several points recognized in the decisional law and department of labor regulations as being relevant to the statutory definition of an employee benefit plan. Some of the points she raises are largely ancillary to the question of payment of premiums. For example, she argues that there is no evidence regarding whether the employer 'endorsed' the policy or whether participation in the group insurance was voluntary. *If the employer actually paid the premiums, these factors could almost inevitably be inferred.*" (Italics added.) (215 Cal.App.3d at p. 856.)

The Dearths contend that Pacemaker did not actually perform any significant administrative functions with respect to the Policy. That contention is incorrect, as previously discussed in this opinion. ■ However, such a contention is also irrelevant because an employer such as Pacemaker cannot defeat the existence of an ERISA plan simply by failing or refusing to discharge its duties under the plan. To allow an employer to do so would defeat the purpose of ERISA. The Dearths' argument was similarly dismissed by the Ninth Circuit Court of Appeals in *Kanne v. Connecticut General Life Ins. Co.* (9th Cir. 1988) 859 F.2d 96, 99, in which the court noted that the employer's actual functions with respect to an ERISA plan do not determine ERISA coverage because "the term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." (Italics deleted.)

■ The facts in this case are that Pacemaker paid an administration fee to Great Republic each month for the purpose of assisting Pacemaker in the performance of its administrative duties and responsibilities with respect to its employee benefit plan. Those administrative duties and responsibilities which may have been performed by Great Republic were thus performed by and for Pacemaker in administering the employee benefit plan.

In *Rizzi v. Blue Cross of So. California, supra,* 206 Cal.App.3d 380, the California Court of Appeal conducted an in-depth analysis concerning when a group insurance program is an employee benefit plan subject to ERISA. In *Rizzi,* the employer entered into an agreement with Blue Cross under which Blue Cross would provide hospitalization and major medical benefits to eligible employees of the employer. The employer contributed to the insurance premiums for the employee coverage under the Blue Cross plan. The court held: "In light of that fact [that the employer contributed to the insurance premiums] in context with the form of the Blue Cross plan showing other employer controls over operation of the program, Blue Cross carried its burden at the summary judgment hearing to establish the existence of an ERISA plan." (*Id.,* at p. 391.)

In the case of *Cantrell v. Great Republic Ins. Co.* (9th Cir. 1989) 873 F.2d 1249, the United States Court of Appeals for the Ninth Circuit held that Great Republic's group policy of health insurance obtained by an employer for the benefit of its employee constituted an employee benefit plan preempted by ERISA.

In *Lambert v. Pacific Mutual Life Ins. Co., supra,* 211 Cal.App.3d 456, the insured, Charles Lambert, was a 16-year-old stepson of an employee who was insured as a result of his employer obtaining group medical insurance

coverage for its employees through a group health insurance policy under-written by Pacific Mutual. The employer paid part of the premium for its employee (whereas here 100 percent of the premium is paid by Pacemaker for its employees). Charles Lambert was seriously injured in a motorcycle accident which rendered him a quadriplegic and totally disabled. A dispute arose over his insurance claims to Pacific Mutual, and he filed suit for fraud, tortious breach of contract, and violation of statutory duties under the Insurance Code. Pacific Mutual moved for summary judgment, contending that all of Lambert's common law causes of action were preempted by ERISA. The trial court granted summary judgment in favor of Pacific Mutual despite the fact that the former president of the employer submitted a declaration in opposition to the summary judgment motion, stating that the employer never intended to establish any type of employee benefit plan under ERISA or to assume responsibility for or administer an ERISA plan or filed any reports or financial information pursuant to ERISA.

The Court of Appeal affirmed the summary judgment in favor of Pacific Mutual and made the following comments concerning its finding of the existence of an ERISA plan:

"For example, in *Rizzi*, the court found a group insurance plan maintained by the employer was an ERISA plan where the employer paid all premiums and had the authority to terminate the plan, and coverage could not be cancelled by the insurer while the insured remained an employee and the premiums were paid. [Citation.]

"In *Kanne* v. *Connecticut General Life Ins. Co.*, *supra*, 867 F.2d at pages 492-493, the court reviewed a plan administered by an employer group of which the litigating employee's employer was a member. Pursuant to ERISA's requirements, the plan was established as a trust, and the trust 'purchased' a group health insurance from Connecticut General. The court noted the record was ambiguous as to whether the employer had contributed payments toward the employee's insurance coverage, or whether the employee's participation in the plan was voluntary or automatic. Further, the employer's function with respect to the plan was minor and ministerial, and no evidence suggested the plan was administered by a profit-making concern. Notwithstanding the lack of evidence as to the employer's involvement, the court held an ERISA plan was established by the *employer group's* involvement, which group . . . was considered an employer for purposes of ERISA under section 1002(5)." (Original italics.) (*Lambert* v. *Pacific Mutual Life Ins. Co.*, *supra*, 211 Cal.App.3d at pp. 464-465.)

Similarly, *Hughes* v. *Blue Cross of Northern California*, *supra*, 215 Cal.App.3d 832, specifically provides that an employee benefit plan subject

to ERISA preemption may exist on a showing *only* that the employer procured insurance for the benefit of his employees, maintained control over termination of the policy, and performed certain incidental services. (*Id.*, at pp. 853-855.)

In *Hughes*, the Court of Appeal stated as follows: "Applying *Fort Halifax* to group insurance programs, *Rizzi* v. *Blue Cross of So. California, supra*, 206 Cal.App.3d 380, 389, concluded: 'the line of demarcation between ERISA plans and non-ERISA plans depends on the level of involvement by the employer in the program so as to warrant federal regulation of the administrative integrity of the program.' This language must be read, however, in light of the actual holding of the case. The court affirmed a summary judgment dismissing the action on the ground of ERISA preemption on a showing only that the employer procured the group insurance policy for the benefit of its employees, maintained control over amendment or termination of the policy, and performed certain incidental services, such as transmission of subscription charges and notices. The analysis in *Rizzi* of the employer involvement issue was closely followed on very similar facts in *Lambert* v. *Pacific Mutual Life Ins. Co., supra*, 211 Cal.App.3d 456, 462.)" (215 Cal.App.3d at pp. 854-855.)

C. *Establishment of an ERISA Plan Does Not Require a Writing, Notice, or Reporting to Any Governmental Agency.*

■ The establishment and existence of an ERISA plan does not require a written document. In *Donovan* v. *Dillingham, supra*, 688 F.2d 1367, the 11th Circuit Court of Appeals specifically held that ERISA does not require a formal written plan or the satisfaction of any reporting requirements in order to be an employee welfare benefit plan. On this point, the Court of Appeals stated: "*ERISA does not, however, require a formal, written plan.* ERISA's coverage provision reaches 'any employee benefit plan if it is established or maintained' by an employer or an employee organization, or both, who are engaged in any activities or industry affecting commerce. [29 United States Code section 1003(a).] *There is no requirement of a formal, written plan* in either ERISA's coverage section, ERISA § 4(a), 29 U.S.C. § 1003(a), or its definitions section, ERISA § 3(1), 29 U.S.C. section 1002(1)." (Italics added and original italics deleted.) (*Id.*, at p. 1372.)

The court further stated: "Furthermore, because the policy of ERISA is to safeguard the well-being and security of working men and women and to apprise them of their rights and obligations under any employee benefit plan, [citation], *it would be incongruous for persons establishing or maintaining informal or unwritten employee benefit plans, or assuming the responsibility*

*of safeguarding plan assets, to circumvent the Act merely because an administrator or other fiduciary failed to satisfy reporting or fiduciary standards.*" (Italics added.) (688 F.2d at p. 1372.)

In *Scott* v. *Gulf Oil Corp.* (9th Cir. 1985) 754 F.2d 1499, the Ninth Circuit Court of Appeals held that failure to meet any reporting or writing requirements does not exempt a plan from coverage under ERISA. The Court of Appeals in *Scott* stated: "Although ERISA contains numerous requirements that a plan must adhere to—a written instrument, named fiduciaries, public reports, etc., *see id.* §§ 1021-1031, 1101-1114—*these requirements are not part of the definition of the 'plan.'* [¶] *Failure to meet these requirements does not exempt Gulf from coverage by ERISA.*" (Italics added.) (*Id.*, at p. 1503.)

The Code of Federal Regulations specifically provides that there are no reporting requirements for an employee welfare benefit plan established by an employer that has fewer than 100 participants and is part of a group insurance arrangement used by unaffiliated employers. (29 C.F.R. §§ 2520.104-20 and 2520.104-43.)

In *Lambert* v. *Pacific Mutual Life Ins. Co., supra,* 211 Cal.App.3d 456, the employer submitted a declaration in opposition to the insurance company's summary judgment motion stating that the employer never attempted or intended to establish any type of employee benefit plan under ERISA or to assume responsibility for or administer an ERISA plan or to file any reports or financial information pursuant to ERISA. The Dearths attempted to submit exactly the same type of declaration in opposition to Great Republic's summary judgment motion signed by Stephen Adams, president of Pacemaker.

The Court of Appeal in *Lambert* nonetheless affirmed the summary judgment motion in favor of the insurance company finding ERISA preemption. Furthermore, in his deposition, Stephen Adams, president of Pacemaker, testified that although he knew nothing about ERISA or the concept of an employee benefit plan described in ERISA, it was nonetheless his intention to provide benefits to his employees and their dependents by purchasing the Policy. Mr. Adams stated in his deposition testimony that his declaration in opposition to the summary judgment motion was prepared by the Dearths' counsel and that the references contained in that declaration to an "employee welfare benefit plan" were intended to mean that he had no knowledge of any legal requirement that Pacemaker maintain such a plan. Mr. Adams' deposition testimony was that Pacemaker voluntarily did maintain such a plan for its employees.

In their opening brief, the Dearths claim that there is no employee benefit plan in this case because there was no actual notice regarding ERISA

contained in the certificate of insurance issued to them by Great Republic. This same argument was raised by the plaintiff in *Rizzi* v. *Blue Cross of So. California, supra,* 206 Cal.App.3d 380, and was rejected by the California Court of Appeal. In *Rizzi,* the plaintiff argued that he did not understand that he was covered by an ERISA plan and that he had never been offered a plan that had the words ERISA in it. The Court of Appeal in *Rizzi* rejected the plaintiff's arguments that his group insurance benefits purchased through his employer were not covered under ERISA. (*Id.,* at p. 391.)

D. *Great Republic Appropriately and Timely Raised ERISA Preemption in the Trial Court.*

■ In their opening brief, the Dearths complain that the issue of ERISA preemption was not raised until Great Republic made its summary judgment motion. However, Great Republic did not discover that Pacemaker had an employee welfare benefit plan for its employees until the deposition of the designated representative of Pacemaker, John Charles Smida, was taken on June 15, 1990. Immediately upon discovering the existence of ERISA preemption, Great Republic filed its summary judgment motion on June 21, 1990.

Although the Dearths opposed Great Republic's motion for summary judgment, they did not assert in the trial court that ERISA is an affirmative defense which must be alleged, nor did they assert any lack of notice or prejudice on the issue of ERISA preemption. In fact, in their opposition to Great Republic's summary judgment motion, the Dearths asserted that the superior court had jurisdiction over their claims for ERISA plan benefits.

The Dearths are now asserting for the first time on appeal that ERISA preemption is an affirmative defense which must be pleaded and cite *Washington* v. *American League of Professional Baseball Clubs* (9th Cir. 1972) 460 F.2d 654, a case which was decided before ERISA was enacted and which discusses federal rules of procedure. "[U]nder settled principles of appellate review, questions not raised in the court below may not be raised for the first time on appeal." (*Estate of Cooper* (1970) 11 Cal.App.3d 1114, 1123 [90 Cal.Rptr. 283]; see also *Richmond* v. *Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874 [242 Cal.Rptr. 184].) Furthermore, Great Republic filed an answer to the Dearths' second amended complaint in which it alleged ERISA preemption. Finally, California law does not require that preemption be alleged as an affirmative defense and specifically allows preemption to be raised for the first time by summary judgment motion. (*Hartenstine* v. *Superior Court* (1987) 196 Cal.App.3d 206, 213-214 [241 Cal.Rptr. 756]; see also *Molina* v. *Retail Clerks Union etc. Benefit Fund* (1980) 111 Cal.App.3d 872, 878 [168 Cal.Rptr. 906].)

*E. The Dearths Have Waived Any Right to Amend Their Complaint to Allege a Cause of Action Under ERISA.*

■ The Dearths contend that if ERISA preemption applies to their claims, then they should be given the opportunity to allege a cause of action for ERISA plan benefits. In support of this position, the Dearths cite the verbal request of their attorney at the time of the summary judgment hearing on July 24, 1990, for "leave to amend this to state an action under ERISA." The court replied "go ahead and file whatever papers are necessary." Although over two months elapsed before judgment was entered against the Dearths on October 4, 1990, they did nothing to amend their pleadings as permitted by the court. Accordingly, they have waived any right to amend their complaint to state a cause of action for ERISA plan benefits and may not now request leave to do so. (*People* ex rel. *Dept. Pub. Wks.* v. *Vallejos* (1967) 251 Cal.App.2d 414, 416-417 [59 Cal.Rptr. 450]; *Otworth* v. *Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 457-458 [212 Cal.Rptr. 743]; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1135, p. 550.)

*F. The Broad Language of the ERISA Preemption Statute Requires That the Causes of Action Against Nagler Be Preempted.*

■ As set forth above in the procedural history portion of this opinion, appellants have alleged three causes of action against Nagler. The first is for breach of statutory duties. More particularly, appellants' second amended complaint alleges that Nagler, *while in his capacity as an agent for Great Republic, and while processing claims* on behalf of Great Republic, breached Insurance Code section 790.03 et seq. Accordingly, Nagler's liability on that cause of action *is completely derivative* to the liability of Great Republic.

Next, the operative complaint also alleges that Nagler was negligent and/or breached fiduciary duties by virtue of improperly filling out the relevant insurance application and by virtue of misstating the scope of coverage under the Policy.

As previously discussed, the Policy is subject to ERISA. All of the foregoing causes of action are clearly preempted by the broad sweep of the ERISA preemption statute. More particularly, 29 United States Code section 1144(a) provides:

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter *shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit*

plan described in 1003(a) of this title and not exempt under section 1003(b) of this title." (Italics added.)

The United States Supreme Court, in analyzing this provision, has repeatedly emphasized the *sweeping and broad effect* of said preemption provision. More particularly, the Supreme Court in *Ingersoll-Rand Co. v. McClendon* (1990) 498 U.S. 133 [112 L.Ed.2d 474, 111 S.Ct. 478], clearly discussed the broad effect of 29 United States Code section 1144(a) as follows:

" '*The pre-emption clause is conspicuous for its breadth.*' Its 'deliberately expansive' language was 'designed to "establish pension plan regulation as exclusively a federal concern." ' *The key to § 514(a) is found in the words 'relate to.' Congress used those words in their broad sense, rejecting more limited pre-emption language that would have made the clause 'applicable only to state laws relating to the specific subjects covered by ERISA.'* Moreover, to underscore its intent that § 514(a) be expansively applied, Congress used equally broad language in defining the 'State law' that would be pre-empted. Such laws include 'all laws, decisions, rules, regulations, or other State action having the effect of law.'

" 'A law *"relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.' Under this 'broad common-sense meaning,'* a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." (Italics added, citations omitted.) (498 U.S. at pp. 138-139 [112 L.Ed.2d at pp. 483-484, 111 S.Ct. at pp. 482-483].)

*Ingersoll-Rand* involved a state wrongful termination claim where plaintiff alleged that he was terminated to prevent his attainment of benefits under an ERISA Plan. In holding that said state common law cause of action was preempted, the court stated:

"Here, *the existence of a pension plan* is a critical factor in establishing liability under the State's wrongful discharge law. As a result, this cause of action relates not merely to pension benefits, *but to the essence of the pension plan itself.*" (Italics added.) (498 U.S. at pp. 139-140 [112 L.Ed.2d at p. 484, 111 S.Ct. at p. 483].)

The court continued: "McClendon argues that the pension plan is irrelevant to the Texas cause of action because all that is at issue is the employer's improper motive to avoid its pension obligations. *The argument misses the point, which is that under the Texas court's analysis there simply is no cause*

of action if there is no plan." (Italics added.) (498 U.S. at p. 140 [112 L.Ed.2d at p. 485, 111 S.Ct. at pp. 483-484].)

This broad expansive aspect of the ERISA preemption statute has also been emphasized by the Supreme Court in *Shaw* v. *Delta Air Lines, Inc.* (1983) 463 U.S. 85, 90 [77 L.Ed.2d 490, 496-497, 103 S.Ct. 2890] and *Pilot Life Ins. Co.* v. *Dedeaux, supra,* 481 U.S. 41, 52, 54 [95 L.Ed.2d 39, 50-51]. More particularly, *Pilot Life* specifically held that ERISA preempts all common law claims relating to an insurer's failure to pay benefits. Finally, 29 United States Code section 1144(a) has been given broad application by all recent California Court of Appeal decisions involving group health plans. (*Rizzi* v. *Blue Cross of So. California, supra,* 206 Cal.App.3d 380, and *Lambert* v. *Pacific Mutual Life Ins. Co., supra,* 211 Cal.App.3d 456.)

Here, this broad sweeping statute, which has been expansively interpreted by the courts, clearly preempts all three causes of action against Nagler.

1. *The claim for breach of statutory duties indubitably "relates to" the plan*

As set forth above, a cause of action is preempted if it "relates to" a plan. (29 U.S.C. § 1144(a).) Further, the term "relates to" applies if the cause of action has a "connection with" the plan. (*Ingersoll-Rand Co.* v. *McClendon, supra,* 498 U.S. 133, 139 [112 L.Ed.2d 474, 484, 111 S.Ct. 478, 483.) Here, appellant's claim for breach of statutory duties clearly "relates to" and has a "connection with" the plan. More particularly, the complaint alleges that Nagler is liable by virtue of his conduct as Great Republic's agent in processing claims. This claim processing function clearly "relates to" and has a "connection with" the plan.

Further, that this claim is preempted is also clear under a basic agency law analysis. Said cause of action alleges that in doing the tortious conduct, Nagler was acting as the *agent* for Great Republic. It would seem clear that if the insurer, Great Republic, was the alleged tortfeasor, this claim would be preempted under *Pilot Life.* It therefore follows a fortiori, that this same claim against the insurer's agent should also be preempted.

2. *The causes of action in negligence and breach of fiduciary duty also "relate to" the plan*

However, whether the negligence and fiduciary duty claims are also preempted poses a superficially more difficult question. However, even a cursory review of the allegations supporting said claims make it abundantly clear that all of the alleged conduct by Nagler has the requisite

"connection" with the plan. More particularly, both causes of action are premised on the factual allegation that Nagler failed to properly fill out the insurance application and failed to adequately apprise appellants of the plan's coverage. Further, it is clear that all of said conduct took place at a meeting set up by the employer for purposes of having employees sign up with the plan.

All of the foregoing conduct has a sufficient "connection with" the plan so that it "relates to" the plan. Further, here, as in *Ingersoll-Rand*, there would be no causes of action against Nagler at all without the plan. Stated another way, none of the foregoing allegations have anything to do with Nagler's conduct, except as it relates to the plan. Accordingly, under the broad preemptive statute, these causes of action "relate to" the plan and are preempted.

■ That these causes of action are preempted is also once again clear under a basic agency analysis. More particularly, ERISA intentionally limits a plan beneficiary's remedy against a plan fiduciary to plan benefits. (29 U.S.C. § 1132(a)(1)(B).) It seems clear that under the analysis in *Pilot Life* that if this particular conduct was alleged against either Great Republic or Pacemaker, both plan fiduciaries, it would be preempted. Accordingly, if Nagler was acting as an agent for either of these fiduciaries, which he demonstrably was, it makes no logical or legal sense to have one limited remedy against a fiduciary and a separate and greater remedy against an agent acting on behalf of a fiduciary. That result would defeat an overriding purpose of ERISA, which is to have uniform standards and a uniform, carefully integrated, civil enforcement scheme. Accordingly, if these causes of action are preempted as against a fiduciary, they should also be preempted with respect to a fiduciary's agent. Otherwise, there will be a multiplicity of remedies.

G. *The Majority of Other Cases Dealing With This Issue Have Held That Claims Against Agents Are Preempted.*

■ Finally, two of the three courts which have dealt with this particular issue, have found preemption in similar circumstances. Our search has not revealed any California cases on point. The issue of whether related claims against an insurance agent are preempted by ERISA in a health insurance context has been addressed on three occasions by other courts. Two of these courts have held, and it is the better position, that such claims against insurance agents are preempted.

A case substantially like this one is *Farlow* v. *Union Cent. Life Ins. Co.* (11th Cir. 1989) 874 F.2d 791. In *Farlow*, the plaintiff beneficiaries were

originally covered under a policy of insurance which provided maternity and pregnancy coverage. Thereafter, the defendant, Peterson, an independent agent acting for himself and the insurer, Union Central, contacted plaintiff to solicit a new group health plan. Peterson represented that the new policy would provide maternity or pregnancy coverage in order to induce Farlow to change plans. The new plan did not provide said benefits, and after having a claim refused, plaintiffs sued both the agent and the insurer for fraudulent misrepresentation and *negligence*. In holding that the Farlow's claims of misrepresentation and negligence against the agent Peterson were pre-empted, the court stated:

"The Farlows' claims more closely resemble the employee's claim in *Howard*. The Farlows's complaint alleges that Peterson negligently failed to disclose that the Union Central plan did not provide maternity and pregnancy coverage and fraudulently misrepresented that the Union Central plan's coverage was coextensive with Pace Plus's former plan's coverage. *As in Howard, the conduct alleged in these claims is not only contemporaneous with Union Central's refusal to pay benefits, but the alleged conduct is intertwined with the refusal to pay benefits. Finding the Farlows' state law claims not wholly remote in content from the Union Central plan, we reject the Farlows' contention that simply because their claims involve misconduct in the sale and implementation of the Union Central plan, their claims do not relate to the plan.*" (Italics added.) (*Id.*, at p. 794.)

Here, as in *Farlow*, all of the alleged conduct by Nagler is clearly contemporaneous with Great Republic's refusal to pay benefits. Further, and perhaps more critically, as in *Farlow*, the alleged conduct of Nagler is absolutely *intertwined* with Great Republic's refusal to pay benefits.

The Court of Appeals of the Eleventh Circuit in *Belasco v. W.K.P. Wilson & Sons, Inc.* (11th Cir. 1987) 833 F.2d 277 again held that state law claims against an insurance broker are preempted by ERISA. In *Belasco*, insured parents brought a state action against the insurer and the broker for medical and surgical benefits and for bad faith and fraud. The court initially held that the causes of action against the insurer were clearly preempted. Thereafter, the court also held that all of plaintiffs' claims against the broker and brokerage company were also preempted. The court stated: "It is, initially, less certain that plaintiffs' claims against Wilson are pre-empted. *Dedeaux* and *Taylor* involved suits against an insurance company, but neither was against an agency. . . . *Taylor*, however, does provide some guidance. In that case, the plaintiff/employee not only sued the insurance company that issued the group insurance policy, but also sued his employer 'for wrongful termination of his employment and for wrongfully failing to promote him.'

The Supreme Court concluded that the employee's claims ' "relate[d] to [an] employee benefit plan" ' and were pre-empted by ERISA under the rule of *Deadeaux*, without distinguishing between the claims against the insurer and the related, but distinct, claims against the employer. *This indicates that the 'broad, common-sense meaning' of the term 'relate to,' is quite broad indeed.* We therefore conclude that the reach of ERISA preemption extends not only to the claims against CIGNA, but to the claims against Wilson as well." (Italics added, citations omitted.) (*Id.*, at p. 281.)

Conversely, the only insurance agent case favoring appellant is *Perkins* v. *Time Ins. Co.* (5th Cir. 1990) 898 F.2d 470. In *Perkins*, the plaintiff alleged that the defendant, an independent agent, misrepresented the extent of coverage under an ERISA insurance plan. In holding that the fraud claims against the agent were not preempted, the court stated: "we conclude that a claim that an insurance agent fraudulently induced an insured to surrender coverage under an existing policy, to participate in an ERISA plan, which did not provide the promised coverage, 'relates to' that plan only indirectly." (*Id.*, at p. 473.)

The three federal cases may be somewhat difficult to reconcile. However, we are of the opinion that the Eleventh Circuit analysis is the appropriate analysis. Here, as in *Farlow*, the respondent's conduct is so intertwined with the insurer's refusal to pay benefits that preemption is proper. Further, as noted by the court in *Belasco*, the term "relate to" is very broad and should include appellants' related claim against the agent, Nagler. Next, *Perkins* is distinguishable, if at all, because it involved a cause of action for fraudulent misrepresentation, a claim which is not alleged here. Accordingly, these cases, when read in conjunction with the cases discussing the "broad sweep" of 29 United States Code section 1144(a), make it clear that preemption of the causes of action against Nagler is proper.

H. *Dearths' Technical Arguments Attacking the Judgment for Nagler on Procedural Grounds Are Not Meritorious.*

Appellants' final argument is that summary judgment for Nagler was improper for procedural reasons. However, that argument is unavailing, because to have done below what appellants suggest would have been a waste of judicial resources. More particularly, the issue of whether the Policy was part of a plan, and therefore subject to ERISA was common to both Great Republic and Nagler. This issue was fully briefed by Great Republic in the proceedings below. Accordingly, because the facts on that issue were identical for both Nagler and Great Republic, it would have made no practical sense for Nagler to reraise and reargue that issue.

Accordingly, the only necessary issue to be raised by Nagler below was: assuming ERISA applies, are the claims against Nagler also preempted? The briefs submitted by Nagler were sufficient in this regard.

Further, the technical deficiencies raised by appellants are of no significance. Appellants had ample opportunity to submit points and authorities in opposition to the Nagler motion. They did so. The court reviewed the Nagler motion, the opposition submitted by appellants and the Nagler reply brief. That was sufficient for the court to make a decision, and that decision was correct.

## VI.

### DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondents.

Lillie, P. J., concurred.

**JOHNSON, J.,** Concurring and Dissenting.—I concur in the judgment as to the affirmance of summary judgment in favor of Great Republic. I respectfully dissent, however, from the affirmance of summary judgment in favor of Nagler.

The majority opinion uncritically accepts respondent's position and rationale on all issues, including the question of ERISA preemption of all causes of action against the insurance agent. I am unable to do so. In particular, I find the recent Fifth Circuit opinion, *Perkins* v. *Time Ins. Co.* (5th Cir. 1990) 898 F.2d 470, more persuasive and more relevant to the instant case than the two earlier, apparently contrary, Eleventh Circuit decisions—*Farlow* v. *Union Cent. Life Ins. Co.* (11th Cir. 1989) 874 F.2d 791 and *Belasco* v. *W.K.P. Wilson & Sons, Inc.* (11th Cir. 1987) 833 F.2d 277.

According to the allegations of the complaint and the evidence before the court on summary judgment, here as in *Perkins* the defendant was an insurance agent. Here, as in *Perkins*, before the medical plan went into effect and while the plaintiffs were considering whether to participate, the defendant misled the plaintiffs about the extent of coverage under the plan he was selling. Here, as in *Perkins*, the plaintiffs thus accepted a medical plan which did not cover their needs and, accordingly, gave up consideration of medical plans, individual or otherwise, which would have given them appropriate coverage.

I agree with the *Perkins* court—the insurance agent's alleged misconduct was not "related to" the group medical plan in any meaningful sense. It had

nothing to do with the ongoing administration or performance of the plan itself. Rather what the insurance agent did occurred before the plan was established and involved steering plaintiffs to that plan and away from insurance which may have provided them the coverage they needed.

As the *Perkins* court recognized, the language of ERISA's preemption clause does not encompass conduct so remote from the operation of the plan itself. There is a limit to the concept "related to" and the insurance salesman's "steering" activities fall beyond that limit. Moreover, the policies behind ERISA's preemption clause are not furthered by extending its reach to immunize from ordinary common law civil liability the insurance agent's misleading sales pitch which, incidentally, occurred before the plan went into effect. In no way does this insurance salesman's misrepresentations implicate the "careful balanc[e]" between "the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans" which the Supreme Court found to be the policy rationale for the preemption clause. (*Pilot Life Ins. Co.* v. *Dedeaux* (1987) 481 U.S. 41, 54 [95 L.Ed.2d 39, 52, 107 S.Ct. 1549].) Nagler's alleged actions have nothing to do with claims settlement or anything else related to the administration of the plan or its benefits. This insurance salesman could be held liable for the conduct alleged in the causes of action against him without in anyway disturbing or otherwise affecting the "careful balance" described in *Pilot Life*. Conversely, to exempt Nagler from his ordinary responsibilities to tell the truth when selling insurance policies merely because the policy involved may become structured to qualify as an "employee benefit plan" in no way furthers this "careful balance" nor any other policy embodied in ERISA.

For these reasons, I would reverse the summary judgment which the trial court entered in favor of respondent Nagler.